LARIO, J. T. C.
These matters involve 246 local property tax appeals taken by Atlantic City from judgments entered by the Atlantic County Board of Taxation reducing assessments on individual condomin *151 ium units located in The Berkley Condominium for the tax year 1976. Defendants were represented by the same counsel and the parties have stipulated that all matters be consolidated for trial.
The original assessments, ranging from $20,000 to $105,800 for an aggregate assessment of $10,506,250, were reduced by the county board to a range of $11,400 to $60,300 for an aggregate assessment of $6,010,700.
The Berkley is a luxury high-rise apartment building located in the section of Atlantic City known as “Chelsea” and described by defendants as being the “silk stocking district.” It has 22 floors, the first three consisting of public space and the next 19 contain the 246 condominium apartments under appeal.
The building was the first large project in Atlantic City built as a condominium from the ground up; up to that point the others were rental apartment conversions. As of the assessment date, October 1,1975, the building was not quite three years old.
There are 13 type units on each floor, classified as “Unit Series A” through “Unit Series N.”[1] Each floor is laid out uniformly, with apartments extending two units wide from the ocean side to the rear. The two units classified as “Series A” and “Series B” are located on the ocean side and apartments designated “Series M” and “Series N” are located in the rear end of the building fronting on Atlantic Avenue. The remaining nine units are located in between and front on the two side streets.
Each of the units contains the following approximate amount of square footage: Series A, B and M, 1,553 square feet; Series E, F, G and H, 1,237 square feet; Series N, 941.5 square feet; Series C, D, J and K, 931.5 square feet, and Series L, 597.1 square feet. Units designated Series A and C located on the top floor were combined into a single unit and given the designation “PH-1(A&C).”
*152 The assessor testified that he arrived at his assessments by the summation approach. He determined the replacement cost of the total building to be $9,630,000 which he depreciated by 5%, resulting in a depreciated value of $9,148,500. He then calculated the net living space in the building, 282,600 square feet, which he prorated to arrive at a value of $32.30 a square foot of living space. He then applied this value to the size of each living unit. To the resulting sum for each unit he then added the prorated land value based upon actual purchase price, resulting in his basic net reproduction cost for each series unit. He further testified that the common elements, other than the land, were not separately assessed but instead were considered as an undivided interest included in the value of each unit.
He then adjusted these series unit prices to reflect each series’ differentiation by reason of its respective location within each floor and the level of the floor. Series A and B, which were oceanside apartments, were given the highest value and he assigned to them a graduated increase of approximately $750 a floor, going from $52,200 for the fourth floor to $65,700 for the top floor. The remaining series units on each floor were given lower adjustments based on their respective location; however, these units were also given graduated increases for each higher floor.
Although his original aggregate assessments for the 246 units came to $10,544,000, he placed into evidence sales data of all the units under appeal, both original sales and market resales, which indicated a total market value of all units to be $12,151,800. The majority of these sales occurred in 1974 and the balance took place in 1975 and 1976.
In defense of the county board judgments defendants argued the original assessments were (1) above true value and (2) discriminatory. Although true value was placed in issue, at the trial no evidence was submitted to rebut the evidence of true value introduced by plaintiff.
The assessor testified that since this was the first bona fide high-rise condominium built in Atlantic City, there were no true *153 comparables that could be utilized; therefore, in calculating his original assessments he relied upon his summation approach, the result of which he has since tested by the sales and resales of the units under appeal.
The taxpayers’ expert did not place in evidence any of the sales of the subject units, either original or resale, for the purpose of testing true value, nor did he introduce any other sales for this purpose.[2] He did not comment nor attempt to refute the assessor’s testimony concerning the use or effect of said sales. No attempt was made by the taxpayers’ expert to establish that the various considerations paid in the original sales and resales were not usable and reliable to arrive at a conclusion of value of the units under appeal as of the assessing date. Instead, defendants relied mainly upon the allegation of discrimination.
The taxpayers’ expert testified that the true value of Series Units A and B averaged $69,000; Series Unit M, $61,000; Series Units E, F, G and H, $53,000; Series Unit N, $40,000; Series Units E, D, J and K, $40,000; Series Unit L, $27,400, and Series Unit PH-1(A&C), $109,900. He did not differentiate between the respective values based upon the floor upon which they were located, but instead he averaged them. His aggregate true value was $12,163,800, which is $12,000 higher than the city’s estimate.
“On appeal from the determination of the County Board of Taxation, the hearing before the Division of Tax Appeals[3] is a de novo one in which the ultimate fact sought to be determined is the full and fair value of the property.” Newark v. Rek Investment Co., 80 N.J.Super. 552, 557, 194 A.2d 368 (App.Div.1963).
*154 “The statutory standard for assessment is ‘full and fair value’ of the property ‘at such price’ as in the judgment of the assessor ‘it would sell for at a fair and bona fide sale by private contract.’ N.J.S.A. 54:4-23.” Riverview Gardens v. North Arlington, 9 N.J. 167, 87 A.2d 425 (1952). Hackensack Water Co. v. Old Tappan, 77 N.J. 208, 213, 390 A.2d 122 (1978).
It is well settled that on appeal to the Division of Tax Appeals3 there exists a presumption of correctness in favor of the judgment of the county board of taxation and that the appellant before the Division has “the burden of ultimate persuasion to upset the county tax board’s judgment.” Glennwood Realty Co. v. East Orange, 78 N.J.Super. 67, 70, 187 A.2d 602 (App.Div.1963).
The presumption in favor of the correctness of the county board judgment stands until sufficient competent evidence is adduced to prove a true value different from the judgment. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952). Since both experts testified to respective true values that exceeded the county board judgments and original assessments, the city has met its burden of proof on its appeal concerning true value. The evidence is overwhelming and unrefuted that the true values of the subject properties are in excess of not only the county board judgments but also in excess of the original assessments; therefore, unless defendants have established their claim for relief based upon discrimination, the complaints requesting restoration of the original assessments will be granted.
Since each of the assessments is not above true value, we must now determine whether defendants are entitled to relief based upon their claim of discrimination, /. e., that defendants have not been assessed at the same standard as other taxpayers within Atlantic City.
“A taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally.” In re Appeals of Kents, 34 N.J. 21, 23, 166 A.2d 763 (1961).
*155 The evidence required to establish a case of actionable discrimination entitling a taxpayer to relief was set forth in Continental Paper Co. v. Ridgefield Park, 122 N.J.Super. 446, 300 A.2d 850 (1973), as follows:
In order to make out a case of actionable discrimination these elements must be proved: (1) that the real property generally in the municipality was assessed at less than true value; (2) what the common level was; and, (3) the true value of the subject property upon which the common level percentage would operate. Reading Co. v. Woodbridge Tp., 45 N.J. 407, 426, 212 A.2d 649 (1965). [at 450, 300 A.2d 850]
“Where assessments in a municipality are not at full value, it also becomes the duty of the Division to determine the common level. In re Appeals of Kents, 34 N.J. 21, 166 A.2d 763 (1961).” Newark v. Rek, supra.
The taxpayers’ claim of discrimination was based on their expert’s examination and interpretation of the Director of Taxation’s sampling of sales used by the Director in the promulgation of his School Aid Table issued in October 1976. The expert testified that his examination of the Director’s study showed that Atlantic City assessments were “all over the lot” and “there is no set pattern of assessments”; and, therefore, there existed in Atlantic City no common level. He compiled from the study all usable sales that took place between July 1, 1975 and June 30, 1976 within the district of Atlantic City known as the “silk stocking district,” extending from Albany Avenue (Black Horse Pike) to Jackson Avenue (Atlantic City-Ventnor borderline) and bounded from the Boardwalk to the Inside Thorofare (an inland waterway that extends from Bader Airport through Albany Avenue to beyond Jackson Avenue) in Atlantic City.
The Berkley Condominium is located within this area. The sales extracted totaled 44 — 22 of which were sales of condominiums located within The Berkley (part of the subject properties under appeal) and the remaining 22 were other than Berkley sales within the balance of this district used by the Director. The expert testified that his analysis of these sales indicated an average sales ratio to original assessments for the 22 Berkley sales to be 93.91%, with a high of 119.6% and a low of 65.57%. The average ratio of sales to assessments for the 22 non-Berkley *156 sales was 53.22%, with a high of 78% and a low of 33.14%. The average on all 44 sales within this district came to 73.51%. This indicated to him that condominiums in The Berkley were assessed at a higher ratio to true value than other properties located within this district. He further stated that the school aid study conducted by the Director indicated a city-wide average ratio of 88.94% as of October 1, 1976.
He further contended that the usable sales throughout the city included by the Director in his 1976 table proved that the assessor had excessively overassessed properties in the depressed area of Atlantic City known as the “Inlet,” while he underassessed properties in other sections of the city, which resulted in a grossly distorted average ratio for the entire city. The Director’s study showed individual sales ratios ranging from 275% down to 25%, which indicated to the expert that (1) there was no common level of assessed true value being utilized by the assessor on a city-wide basis and (2) by excessively assessing properties in the Inlet area the assessor had created average ratios for the year 1976 which were artificial. Based upon this examination of the Director’s study by their expert, defendants claim that the assessments should be based upon the ratio which resulted as a result of the sales of the other 22 properties located in the “silk stocking district,” to wit, 53.11%, or the average ratio as indicated by the sale of all 44 properties within the aforesaid district; to wit, 73.51%, or that this court fashion appropriate relief by finding a realistic average ratio.
The Director’s sales study indicates that there is no single common level of assessment applied uniformly throughout the city. Defendants claim that since there is no uniform common level, their properties should be assessed at a percentage of true value of either 53.11% or 73.51%, or at “a realistic average ratio,” presumably meaning a ratio below the Director’s ratio of 88.94%.
Where it has been satisfactorily demonstrated that there is no common level of assessment within a municipality, our Supreme Court ruled:
*157 Where, as here, the record of sales indicates there is no common level for all or any class of real property and the assessors disavow any effort to achieve one, the average ratio should be deemed sufficient evidence of the level to which reduction should be granted in the absence of circumstances indicating that the average should be modified for that purpose. The trier of the facts may properly consider any weakness which may appear, as, for example, a paucity of sales in the municipality concerned or some imbalance caused by unusual experience. To that end, consideration may be given to the average ratio of other years and to such appraisals of properties as the trier of the facts may feel to be necessary to assure that the average ratio is not grossly deceptive as a fair gauge of the ratio of assessment to market value. Pretrial conferences would be useful to delineate the area of proof, [In re Appeal of Kents, 34 N.J. 21, 31-32, 166 A.2d 763 (1961)]
This rule was further explained by our Appellate Division when it ruled:
[A] taxpayer has no discrimination grievance if the standard of valuation generally applied in the taxing district, if one is discernible, is not more favorable than that which has been applied in the assessment of his property. The short-hand term generally employed since Kents for the just stated standard of valuation is a “common level.” A common level for this purpose may be one which the assessor “consciously seeks to employ” throughout the taxing district (see Kents, supra, 34 N.J. at 30 [166 A.2d 763]), provided the evidence reveals reasonably consistent adherence thereto. The central holding in Kents was that where there is no showing by the taxing district of a common level of assessment, the average ratio of the Director’s sales ratio studies for the year in question for the particular municipality may be used as prima facie evidence of the level to which the true value of the property may be reduced if substantially greater than such ratio. See 34 N.J. at 31 [166 A.2d 763]. [Tri-Terminal Corp. v. Edgewater Boro., 68 N.J. 405, 409-410, 346 A.2d 396 (1975)]
Defendants attempted to establish their claim for relief by producing sales data within a very limited area of Atlantic City which showed that 22 properties sold were assessed at 53.11% and 22 other properties sold (properties within their condominium) were assessed at 93.91%, with an average for this small area of 73.51%.
Defendants’ requested relief is predicated upon a complete misconception of the assessment ratio to be applied. It is fundamental that a taxpayer is entitled to “treatment commensurate with that given to fellow taxpayers within the municipality.” In re Appeal of Kents, supra, 34 N.J. at 25, 166 A.2d 763. In Siegal v. Newark, 38 N.J. 57, 183 A.2d 21 (1961), then Chief Justice Weintraub, speaking for the Supreme Court, stated:
*158 We think it plain that to limit relief to the level of assessment of properties in the same category, would be to join in the very illegality which the Constitution prohibits. Taxable real property must be assessed on the same standard of value and at the same local rate, [at 60, 183 A.2d 21; emphasis supplied]
The fact that defendants can demonstrate that their properties are assessed at a higher percentage to true value than their neighbors’ properties does not alone show that they are aggrieved or that they will be compelled to pay more than their fair share of the total tax burden. Siegal, supra.
Defendants’ request for the use of a ratio of either 53.11% or 73.51% resulted from a study of sales within a very limited district of the municipality and is a form of classification which was rejected in Siegal, supra. The unfairness in attempting to use an average ratio secured from a small classified group of sales becomes quite evident when the results of the expert’s study concerning the 44 sales within this limited district is analyzed. It is argued that the 53.11% ratio reflected by the 22 non-Berkley sales be utilized. Using this logic, since there were also 22 sales within the Berkley, use of the 93.91% could be urged. Or, if the average of 73.51% for the “silk stocking district” be claimed, could not the city claim that the excessively high ratio of the Inlet area be applied? Of course, to apply a ratio of 93.91% or the high Inlet ratio to the Berkley owners when the district-wide ratio is substantially lower would be unlawful. By the same analogy, to apply a ratio to the Berkley owners which is lower than the district-wide ratio would be equally unlawful.
As this court stated in Cantrell v. Upper Pittsgrove Tp., 1 N.J.Tax 508 (Tax Ct.1980):
... [i]n order for a taxpayer to receive relief based upon an allegation of discrimination, he must prove not only that real property generally within the municipality was being assessed at less than true value, but also that the assessment on his property when compared to its true value is at a substantially higher percentage than the common level percentage to the true value of all real property within the municipality. New Brunswick v. State of New Jersey Division of Tax Appeals, 39 N.J. 537, 543-544 [189 A.2d 702] (1963), Continental Paper Co. supra. The comparison cannot be to any particular class of property but must be compared to the common level of the aggregate of all real property. Siegal v. Newark, 38 N.J. 57 [183 A.2d 21] (1962) [at 512]
*159 The burden of proof is upon defendants who are claiming same to establish that the average ratio as found by the Director is deceptive and should not be adopted in these cases. All that defendants have shown is that the sales in one small district, the Inlet area, indicate a high ratio of assessment to true value and that in another small district, the Chelsea section, the sales shown indicate assessments both above and below the average ratio. These facts alone are insufficient to establish their claim. Where individual sales within a community reflect a coefficient deviation from the average greatly in excess of 20%, normally this is the proper basis for a revaluation [4]. However, standing alone, an extreme deviation does not necessarily prove that the average ratio derived from said sales is incorrect or unfair. Defendants have failed to meet their burden of proof that the average ratio of 88.94% found by the Director for the tax year 1976 is not a fair gauge of the proper ratio of assessments to market value to be applied in this case.
I find as a fact that the assessments as originally levied by the assessor for all of the subject properties are not substantially greater than the average ratio of 88.94% as determined by the Director’s sales ratio study for the tax year 1976.
Defendants have completely failed to establish a claim for relief based upon discrimination in that they have failed “to show that relative to the generality of other assessed real property in the municipality, their property is being assessed on a less favorable basis.” Tri-Terminal, supra 68 N.J. at 411-412, 346 A.2d 396. The taxpayers have failed to prove that by reinstating the original assessments their share of the total tax burden substantially exceeds the “share allocated to others generally.” In re Kents, supra 34 N.J. at 33, 166 A.2d 763.
As a part of its case, plaintiff moved that in the event the judgments of the county board of taxation were reversed and increased that said increased assessments be frozen for two *160 years, 1977 and 1978, in accordance with N.J.S.A. 54:2-43, since neither a revaluation nor an upward change of value occurred during these two years.
The factual basis of plaintiff’s motion is as follows:
Plaintiff’s assessor testified that after the entry of judgments by the county board of taxation for the subject cases plaintiff took these appeals. For the tax year 1977, pending these appeals, the assessor attempted to restore his original assessments. The county board “red-lined” these restored assessments and ordered him, in spite of these appeals, to place assessments on the subject properties in conformance with its 1976 judgments for both the years 1977 and 1978. The assessor complied with this order. No appeals were taken by the city from the county board’s order, nor did the city appeal to the county board of taxation its own assessments as levied for the years 1977 and 1978.
Defendants object to the granting of plaintiff’s motion, contending that the city is not entitled to the application of the Freeze Act because (1) the city’s factual contentions were not proven and (2) as a matter of law, the Freeze Act cannot be invoked at the request of a municipality without the consent of the taxpayer.
The municipality’s factual evidence in support of its motion was uncontroverted and convincing. For the purpose of this motion, I find the facts to be as testified to by the assessor. We now must address defendants’ legal contention.
N.J.S.A. 54:2-43 (the Freeze Act) provides:
Where a judgment final has been rendered by the Division of Tax Appeals in the State Department of Taxation and Finance involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such appeal, for the assessment years and for the 2 assessment years succeeding the assessment year covered by the final judgment.
In Eckardt v. Sisler Enterprises, 1 N.J.Tax 25 (Tax Ct.1980), this court held:
The only issue before this court is the standing of the plaintiffs to invoke the Freeze Act over the taxpayer’s opposition. In my view, the resolution of this issue is governed by decisions of our Supreme Court in the cases of Newark v. *161 Fischer, 8 N.J. 191, 84 A.2d 547 (1951); Union Terminal Cold Storage v. Spence, 17 N.J. 162 [110 A.2d 110] (1954), and Hasbrouch Heights v. Division of Tax Appeals, 41 N.J. 492 [197 A.2d 553] (1964). In those cases the court concluded, from an examination of the legislative history, that the Freeze Act was enacted to prevent repeated yearly increases in the assessed value of property, unwarranted by changes increasing the value, resulting in harassment of the taxpayer by subjecting him to the trouble and expense of annual appeals to the county tax board. The statute was thus interpreted to be invoked at the exclusive election of the taxpayer, [at 26-27; emphasis supplied]
The Freeze Act may be invoked solely at the option of the taxpayer. Where the taxpayer has not elected to be bound thereby, the benefits of the Freeze Act are not available to a taxing district or third parties.
In response thereto, plaintiff claims that it is entitled to equitable relief in that the county board in its interpretation of the Freeze Act had ordered plaintiff to lower its assessments. In support of its position it relies upon the case of Boys Club of Clifton v. Jefferson Tp., 72 N.J. 389, 371 A.2d 22 (1977), claiming, similar to the facts therein, that in the instant case the assessor relied on the orders of the Atlantic County Board of Taxation, which was based on its interpretation of the law in existence at that time, and he complied therewith.
The city’s reliance upon Boys Club as authority for its position is inappropriate in that Boys Club is readily distinguishable and its application must be confined to the peculiar facts of that case. First, Boys Club granted relief to a taxpayer and not a municipality; secondly, it dealt with an exemption case and not a valuation case. Thirdly, Boys Club was an exempt organization which appealed from denied applications for exemptions for the years 1971 and 1972. While the appeals were pending it did not file appeals for exemption for the years 1973 and 1974, relying upon the decisions of Catholic Charities of the Diocese of Camden v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.1970) and Newark v. Essex Cty. Bd. of Tax., 110 N.J.Super. 93, 264 A.2d 461 (Law Div.1970). The Supreme Court ruled in favor of Boys Club and, in addition, it overruled Catholic Charities and Newark, supra, holding that the duty of the municipal assessor to obtain a statement from the owner concerning the exempt status of the property owner every three years does not *162 excuse the owner from filing an appeal for the subsequent two years, even though a judgment of exemption had been entered for the prior year. It further ruled that since Boys Club, in reliance upon those decisions, did not file tax appeals for two years, it permitted Boys Club to file appeals nunc pro tunc for the two omitted years.
None of the above factors exist in the present case.
NJ.S.A. 54:3-26, the Freeze Act applicable to county boards of taxation, provides expressly that the county board judgment is binding only “where no appeal is taken to the Division of Tax Appeals.” The county board’s order to the assessor directing him to follow its judgments for the two succeeding years in spite of the municipality’s appeals to the Division of Tax Appeals was directly contrary to the provisions of N.J.S.A. 54:3-26, supra, and it was incorrect. Wayne Tp. v. Robbies, 118 N.J.Super. 129, 286 A.2d 725 (App.Div.1972). Cf. Hudson Terrace Ap’ts v. Fort Lee, 2 N.J.Tax 457 (Tax Ct.1981); Edgewater v. U. S. Life Realty Co., 2 N.J.Tax 421 (Tax Ct.1981). Since the county board’s judgments had been appealed to the Division of Tax Appeals, they were not conclusive and binding upon the municipality.
In the recently decided case of Manturi v. V. J. V., Inc., 179 N.J.Super. 300, 431 A.2d 859 (App.Div.1981), our Appellate Division held:
Here plaintiff placed his reliance upon a single Law Division decision, one of several factors declared in In re Kloppenberg, 82 N.J.Super. 117, 122 [196 A.2d 800] (App.Div.1964), as insufficient basis for reliance. Counsel have cited no New Jersey case where the sole ground for alleged justifiable reliance was a single decision of an inferior court and our research discloses none. In 21 C.J.S., § 194b, p. 330, the exception to the general rule of retroactivity which permits prospective effect is noted to be generally applicable “only where reliance was placed on a decision of a court of last resort, and not on a decision of an inferior court.” In Board of Directors of Chicago Theological Sem. v. People, 189 Ill. 439, 59 N.E. 977 (Sup.Ct.1901), aff’d 188 U.S. 662 [23 S.Ct. 386, 47 L.Ed. 641] (1903), the Illinois court held reliance upon a number of decisions in the county court of Cook County was not justifiable reliance. In a later case an intermediate court of the same state deemed it “logical” that the reliance exception should only apply to opinions by a court of last resort. Garcia v. Hynes-Howes Real Estate, Inc., 29 Ill.App.3d 479, 331 N.E.2d 634 (App.Ct.1975). The logic of such a limitation of the reliance rule is not only implicit in the New Jersey cases but *163 apparent in the very nature of the rule. A decision of an inferior court is not binding on a court of coordinate jurisdiction. Wolf v. Home Ins. Co., 100 N.J.Super. 27 [241 A.2d 28] (Law Div.1968), aff’d 103 N.J.Super. 357 [247 A.2d 345] (App.Div.1968). In this context it has been said that trial court precedent is not to be considered lightly, but in the absence of an appellate authority in New Jersey, a trial court is not obliged to follow it. Lackovic v. New England Paper Tube Co., Inc., 127 N.J.Super. 394, 398 [317 A.2d 426] (Law Div.1974). [at 306, 431 A.2d 859]
In the instant case the city did not rely upon the Freeze Act as interpreted by a decision of our Supreme Court or Appellate Division which was in existence at the time of the reliance but subsequently overruled. Instead it complied with an incorrect order of the county board. The county board of taxation is not a court, let alone an appellate court. It is an administrative body with county wide jurisdiction whose decisions at that time were subject to review by the Division of Tax Appeals, also an administrative body. The municipality’s reliance upon the county board’s order was neither reasonable nor justifiable. It cannot now seek to have this court grant to it relief from its error of law.
Although its order was incorrect, since the county board is administratively superior to the local taxing district, it was proper for the city to comply with the board’s order; however, the city had the right to file an appeal to the then Division of Tax Appeals contesting the county board’s order within 30 days,[5] and having complied with the county board’s order by placing lower assessments, the municipality had the alternate option of filing an appeal from its own assessments to the county board on or before August 15 of the tax years in question, N.J.S.A. 54:3-21, and if no relief were granted, it could then have further appealed to said Division of Tax Appeals. N.J.S.A. 54:2-39.
Failure to file appeals with the county board of taxation, or directly to the Tax Court, where permitted, within the respective statutory dates set forth therein deprives the respec *164 tive appellate tribunal from acquiring lawful jurisdiction. Hackensack Water Co. v. Tax Appeals Div., 2 N.J. 157, 166, 65 A.2d 828 (1949). Since the municipality failed to exhaust its administrative remedies within the statutory filing time limits, this court does not now have jurisdiction to approve plaintiff’s motion and it cannot grant its request for equitable relief by tolling the time limitations contained in the aforesaid appeal statutes. Prospect Hill Ap’ts v. Flemington, 1 N.J.Tax 224, 172 N.J.Super. 173, 411 A.2d 479 (Tax Ct.1979).
Plaintiff’s motion to have the Freeze Act apply to increase the assessments of defendants’ properties for the tax years 1977 and 1978 in accordance with the provisions of the Freeze Act, N.J.S.A. 54:2-43, is hereby denied.
Although the respective true values of the defendants’ properties presently under appeal for the tax year 1976 are in excess of the original assessments, since the municipality did not initiate appeals from its original assessments to the county board of taxation, this court’s judgments cannot exceed the original assessments. Treehaven Ap’ts Inc. v. Matawan, 108 N.J.Super. 111, 260 A.2d 235 (App.Div.1969). Accordingly, judgments will be entered restoring the assessments for the tax year 1976 only as originally imposed in accordance with the schedule which is part of the file.

The only sales placed in evidence by the taxpayers’ expert were those secured from the Director of Taxation’s “Sales Study” which were not placed in evidence as comparable sales for true value purposes.

Now Tax Court, N.J.S.A. 2A:3A-1 et seq.

See Handbook for New Jersey Assessors (rev. 1965), 203 (Bureau of Government Research, Rutgers, the State University).

The rule of the Division of Tax Appeals concerning time within which to file appeals under NJ.S.A. 54:2-35.