NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY
DOCKET NO. 000448-2021

LEVY, MORRIS,

     Plaintiff,

     v.

CITY OF LONG BRANCH,

     Defendant.

:
:
:
:
:
:
:
:
:
:
:
:

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Decided: May 5, 2023

Michael I. Schneck for plaintiff (Schneck Law Group, LLC, attorney).
Robert E. Spiotti for plaintiff (Spiotti & Associates, PC, attorney)[1].

Shaun Peterson for defendant (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorney).

SUNDAR, P.J.T.C.

This opinion decides whether plaintiff is entitled to the benefit of the Freeze Act, N.J.SA. 54:4-34, for tax year 2023 based on this court's final judgment for tax year 2021 "Tax Court case"). The issue calls for a resolution of the effect of the absence of a Freeze Act waiver in the Tax Court case, but the express waiver of the statute in resolving a petition for tax year 2022 filed at the Monmouth County Board of Taxation ("County Board matter"), with both matters being globally settled by the parties.

---

[1] Plaintiff was represented by Schneck Law Group, LLC. At the plenary hearing in this matter, a member of that firm testified. Therefore, plaintiff's legal representation was undertaken by Spiotti & Associates, PC. The testifying attorney will be referred to herein as "Attorney I."

Plaintiff contends that his affirmative waiver of the Freeze Act in the settlement of his County Board matter does not estop him from electing an application of the Freeze Act to the judgment in the Tax Court case. Defendant, the City of Long Branch ("City"), disagrees. It contends that the parties reached a global settlement agreement for both tax years, with both stipulations of settlement being filed in February 2022 (one before the County Board and one before this court), therefore, plaintiff's waiver of the Freeze Act in the County Board matter extends to, or is implicit in, the Tax Court case. Further, the City argues, since the County Board judgment is a value judgment, it evidences a change in value of the property which therefore negates application of the Freeze Act for tax year 2023.

As further explained below, the court finds that plaintiff can invoke protection of the Freeze Act. The stipulation of settlement in the Tax Court case is silent as to the Freeze Act. Based on the record, the court finds that plaintiff's express waiver of the Freeze Act in settlement of the County Board matter does not extend to, nor is implied in, settlement of the Tax Court case. The court is unpersuaded that the only base year in a multi-year settlement must be the last year of the value judgment. The court is also unpersuaded that, without more, the County Board's judgment is proof of a change in value for Freeze Act purposes. Validating such an argument would nullify the statutory requirement in N.J.S.A. 54:51A-8(b). Plaintiff's motion for application of the Freeze Act to tax year 2023 based on the Tax Court's final value judgment for tax year 2021 is granted.

**FACTS**

The facts are based on the documents and testimony proffered at a plenary hearing.[2] Neither party disputed the contents of the documents or the proffered testimony.

---

[2] See n.1. The City proffered the testimony of its outside counsel's ("Outside Counsel") partner who was directly involved in the settlement offers. The City's assessor also testified.

For tax year 2021, plaintiff filed the Tax Court case challenging the assessment of $1,513,600 imposed on his house, identified on the tax map as Block 87, Lot 9.030 ("Subject"). While the case was pending, he provided the City an appraisal report in support for his demand for a reduction of the assessment on September 20, 2021.

In January 2022, plaintiff filed the County Board matter challenging the assessment of $1,513,400 imposed on the Subject for tax year 2022.

In late January 2022, the City's Outside Counsel made a settlement offer to Attorney I for both tax years 2021 and 2022. Outside Counsel's partner testified that he could not recollect any details of the offer and did not have any written record of the same.

By letter of January 31, 2022, Attorney I recommended that plaintiff accept the offer which would reduce the 2021 assessment to $1,412,300, and the 2022 assessment to $1,396,800, provided plaintiff waived the interest payable by the City on the resulting refunds. Simultaneously, and in accordance with the routine business practice of the law firm, Attorney I recorded the details of the settlement in a "check-the-box" document his office routinely uses. This document showed the proposed reductions, the tax savings, and the firm's recommendation to plaintiff. The boxes pertaining to "Freeze Act" which included "Yes" "No" and "Years" were left blank. Attorney I testified that if the offer had required a waiver of the Freeze Act, he would have checked the appropriate boxes in this document and would have included the same as a condition in his letter to plaintiff, as is his routine practice.

After receiving plaintiff's agreement to the offer, a staff member of Attorney I's firm e-mailed the City's assessor of the acceptance, copying Outside Counsel's partner on the e-mail. The assessor e-mailed his reply on the same day that he would prepare the stipulation "for the County matter" within the hour, while Outside Counsel's partner "will prepare the State matter."

The assessor then filled out a form stipulation of settlement for the County Board matter. The stipulation "adjusted" the 2022 assessment to $1,396,800 and noted that the "basis for the settlement" was "market data submitted." Boxes 1 through 5 of the "Terms and Conditions" were checked off which indicated that (1) interest on the resulting refund was waived; (2) taxes and charges should be paid to date; (3) refund would be as a credit against future taxes; (4) the offer should be accepted and received by a date certain; and (5) "Freeze Act under N.J.S.A. 54:51A-8 or 54:3-26 shall not apply to this settlement." The stipulation was electronically signed and forwarded to Attorney I on February 3, 2022, who electronically signed it on the same date. Outside Counsel's partner electronically signed the stipulation on February 4, 2022.

Based on the stipulation, the County Board issued a judgment on February 28, 2022, reflecting the Subject's value as $1,396,800. The judgment noted "Market Data Submitted." It was mailed to plaintiff on March 7, 2022.[3]

On February 16, 2022, the parties filed a stipulation of settlement in the Tax Court case agreeing that (1) the 2021 assessment be reduced to $1,412,300; (2) interest on the resulting refund was waived; and (3) the refund would be as a credit against future taxes. They further agreed that the assessment for tax year 2022 would be $1,396,800, and either party could "file a tax appeal for the 2022 tax year to obtain a judgment to implement, enforce and/or confirm the $1,396,800 assessment agreed upon herein." The stipulation was silent as to the application of the Freeze Act. Outside Counsel's partner testified that a staff member prepared the stipulation, and that he could not recollect the reasons for the absence of the Freeze Act's waiver in the document. The assessor

---

[3] The County Board's judgment did not include any language as to the Freeze Act. Per Attorney I, this is standard.

testified that he did not review the stipulation but had relied upon Outside Counsel to prepare, execute, and file the same with the Tax Court.

On February 23, 2022, this court issued a judgment reflecting the Subject's value as $1,413,200 pursuant to the filed stipulation. Based on the stipulation, the judgment also did not contain any language as to the Freeze Act.

In October 2022, the assessor set the assessment for tax year 2023 at $1,713,900. Plaintiff called Attorney I and queried him as to the increase despite the recent settlement. Attorney I testified that since the Freeze Act was waived only in the County Board matter, he filed a motion before this court for application of the Freeze Act asking that the 2023 assessment of $1,713,900 be set at $1,412,300, the final judgment for 2021 in the Tax Court case. The application did not mention the County Board's judgment for tax year 2022 which was final by this time.

The City opposed the motion claiming that (1) there was a change in value as evidenced by the County Board's judgment, thus, the Freeze Act does not apply; and (2) plaintiff agreed to waive the Freeze Act since the settlement was a package deal, i.e., covered both tax years 2021 and 2022, one pending in this court and the other before the County Board. The parties then briefed the issue whether there can be only one base year in a multi-year settlement based on the ruling in MSGW Real Est. Fund v. Borough of Mountain Lakes, 18 N.J. Tax 95 (Tax 1999).

**ANALYSIS**

The Freeze Act provides as follows:

> a. Conclusiveness of judgment; changes in value; effect of revaluation program. Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the two assessment years succeeding the assessment year covered by the final judgment, except as to changes

5

in the value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within the district has been put into effect. If as of October 1 of the pretax year, the property in question has been the subject of an addition qualifying as an added assessment, a condominium or cooperative conversion, a subdivision or a zoning change, the conclusive and binding effect of such judgment shall terminate with said pretax year.

[N.J.S.A. 54:51A-8(a) (emphasis added).]

The identical language applies to county board of taxation judgments. N.J.S.A. 54:3-26. Precedent interpreting the above statutes holds that a final value judgement must be entered by either the Tax Court or a county board of taxation, as a result of a trial or pursuant to a settlement agreement. See Borough of South Plainfield v. Kentile Floors, Inc., 92 N.J. 483 (1983). The final value judgment amount for the tax year under appeal (known as the "base year") is mechanically carried forward to each of the succeeding two years (known as the "freeze years"). Rockaway 80 Assocs. v. Twp. of Rockaway, 15 N.J. Tax 326, 331 (Tax 1996) ("The freeze attaches to the assessment contained in the base year judgment, and, unless the municipality asserts a change in value . . . the application to the freeze years is a purely mechanical process divorced from considerations of value.").

Here, it is undisputed that the Tax Court and the County Board issued value judgments, and both are final. The issues to be resolved are (1) does the Freeze Act waiver in the County Board matter apply to the Tax Court case due to the global settlement for tax years 2021 and 2022; (2) does the County Board judgment for 2022 negate the existence and vitality of the 2021 Tax Court judgment as a base year; and (3) is the County Board judgment for 2022 proof that the

6

Subject underwent a change in value which negates application of the Freeze Act. The court's conclusions answer "No" to all three questions.

### A. Plaintiff's Waiver of the Freeze Act

Only a taxpayer can waive application of the Freeze Act. City of Atlantic City v. Moltich, 3 N.J. Tax 147, 161 (Tax 1981) ("The Freeze Act may be invoked solely at the option of the taxpayer."). A waiver will generally not be implied because the benefit of the Freeze Act is solely for protection of the taxpayer. Ritchie & Page Distrib. Co., Inc. v. City of Trenton, 29 N.J. Tax 538, 543 (Tax 2016) ("Unless the application of the Freeze Act is affirmatively waived, the provisions apply.").[4]

The four corners of the stipulation filed in the Tax Court supports plaintiff's contention that he did not waive the Freeze Act for 2023 with the 2021 judgment as the base year. The court finds credible Attorney I's testimony that there was no condition attached to the City's January 31, 2022 offer that the Freeze Act be waived, the same being supported by objective documentation in this regard. The City presented no credible proof to the contrary with Outside Counsel's partner being unable to recollect the settlement terms. It is undisputed that there was no iteration of the Freeze Act waiver, whether by the assessor or Outside Counsel, in response to the email from Attorney I's staff confirming acceptance of the City's offer. While this by itself is not fatal, the Freeze Act waiver was still not included in the Tax Court stipulation prepared by Outside Counsel

---

[4] The Freeze Act's protection is also deemed waived, albeit under the theory of election of remedies, if the taxpayer elects to litigate a freeze year to final judgment. Borough of Northvale v. Dir., Div. of Taxation, 17 N.J. Tax 204, 208 (Tax 1998) (there is no freeze benefit if "litigation contesting the assessment for the subsequent year is prosecuted to a separate determination of value for that year."), aff'd, 324 N.J. Super. 518 (App. Div. 1999). Note that merely "filing of appeals for the 'freeze' years does not constitute an election of remedies." Brae Ass'n v. Borough of Park Ridge, 21 N.J. Tax 88, 93 (Tax 2003). "The election is made only when the taxpayer seeks to enter judgment." Ibid. (citation omitted).

7

even though it was filed after the County Board stipulation which contained a waiver and the same partner of Outside Counsel executed both stipulations.

Outside Counsel's partner stated that a specific inclusion of the Freeze Act waiver language in the Tax Court case was/would be superfluous since Monmouth County conducted "annual reassessments." [5] If this was so, then there would be no reason for the City to have included such waiver in the County Board matter.

The court agrees, and plaintiff does not argue otherwise, that settlement of both tax years was discussed together. While this would make the settlement global in a sense, the court is unpersuaded that plaintiff knew that he was expected to waive application of the Freeze Act in the Tax Court case because the Subject is in Monmouth County,[6] or that plaintiff should have been aware of this expectation/implied waiver since he waived application of the Freeze Act in the County Board stipulation. Given that the Freeze Act's protection exists solely for the benefit of a taxpayer, the court will not construe any purported ambiguity in the County Board form stipulation, i.e., that the waiver applies to "this" settlement, in favor of the City and thus extend the Freeze Act's waiver in the County Board matter to the Tax Court case. Indeed, had the County Board reviewed the filed form stipulation, it would have reasonably assumed that the parties were addressing only tax year 2022, i.e., the only year for which plaintiff filed the County Board petition. Based on the record, the court cannot agree with the City that plaintiff implicitly waived

---

[5] Outside Counsel's partner candidly conceded that this was his surmise in hindsight.

[6] When the stipulations were filed in both venues, there were two published decisions holding that inapplicability of the Freeze Act in an annual reassessment county such as Monmouth County, was not an automatic assumption or a legal presumption. See Tartivita v. Borough of Union Beach, 31 N.J. Tax 335 (Tax 2019), aff'd, 33 N.J. Tax 16 (App. Div. 2021); Pella Realty, LLC v. City of Paterson, 31 N.J. Tax 474 (Tax 2020).

the Freeze Act in the stipulation filed with this court. See, e.g., Zisapel v. Borough of Paramus, 20 N.J. Tax 209, 215 (Tax 2002) ("When the taxing district's interest under the Freeze Act conflicts with that of the taxpayer, the taxpayer's interest should be paramount.").

The record clearly reflects that there was no waiver of the Freeze Act in the 2021 Tax Court judgment. There is no evidence to support the City's contention that the Freeze Act waiver in the settlement of the County Board matter extended to the Tax Court matter. Based on the entire record, the court finds that plaintiff did not waive the application of the Freeze Act for tax year 2023 based on the 2021 Tax Court judgment.

*B. Controlling Base Year in Multi-Year Settlements*

Each tax year stands on its own for purposes of local property tax assessments. Therefore, taxpayers can appeal each successive tax year even for years where the Freeze Act would otherwise apply. Brae Ass'n, 21 N.J. Tax at 93 ("During most property tax appeals . . . a taxpayer naturally files an appeal for each of the two years subsequent to the last year at issue to protect itself."). Multi-year tax appeals are generally consolidated either for purposes of trial or settlement. Thus, a multi-year trial or settlement can engender multiple judgments, one for each appealed tax year. This has a resulting effect that each tax year which results in a value judgment (through settlement or trial) can constitute the base year for the following two tax years.

In MSGW, the court ruled that only the last tax year which has a value judgment can be the controlling base year. There, the court tried the valuation issue for two tax years and found the value for Year 1 at a lower amount than as assessed, and the value for Year 2 at a higher amount than Year 1 (but lower than the assessment for that year). Rejecting the taxpayer's claim for Freeze Act relief for Year 3 based on the final value judgment for Year 1, the court held:

The [Freeze] Act was not intended to serve as a vehicle for taxpayers to obtain lower assessments . . . The purpose of the Freeze Act would be served by using either the [Year 1 or Year 2] . . . judgment as the base year judgment. Permitting plaintiff to elect either base year judgment, therefore, is not necessary in order to effectuate the statutory purpose, and would enable plaintiff to manipulate the Act and improperly use it as a device to obtain the lowest possible assessment on plaintiff's property for [Year 3, the freeze year] . . . Such manipulation is not the only consequence flowing from plaintiff's position. Allowing a taxpayer to elect the applicable base year could thwart the self-executing operation of the Freeze Act.

[18 N.J. Tax at 99 (internal quotation marks and citation omitted).]

The court observed that permitting the taxpayer to choose the base year would put assessors in a quandary as they would not know which base year to use when setting the assessment for a freeze year. Id. at 100. If either Year 1 or Year 2 is a base year, then the assessor "would require the taxpayer's input" frustrating the mechanical and self-executing application of the Freeze Act. Ibid. It would effectively "allow[] the taxpayer to determine the [Year 3] assessment" when law imposes this obligation upon the assessor. Ibid. The court concluded that "having elected to litigate two years, plaintiff has waived the right to rely upon the judgment for the earlier litigated year as the base year judgment for Freeze Act purposes." Id. at 100-101. The Freeze Act allows a "repose from litigation for the two years following a litigated year" and this could "be effectuated only by applying the freeze to the last litigated year," the "only" way of preventing an "improper manipulation" of the Freeze Act. Id. at 101 (relying on AVR Realty Co. v. Twp. of Cranford, 294 N.J. Super. 294, 298 (App. Div. 1996)).

Plaintiff argues that this court is not bound by MSGW, and further that the ruling contravenes the plain language of the Freeze Act. The City argues that regardless of the factual differences, the reasoning plainly supports its opposition to plaintiff's Freeze Act application.

The court finds that the facts and consequent ruling in MSGW are inapposite. Here, unlike in MSGW, the issue is whether plaintiff waived the benefit of the Freeze Act for tax year 2023 based on a global settlement of two tax years, each pending in a different venue, each generating separate stipulations of settlement, one with a Freeze Act waiver and one without. Thus, unlike in MSGW, the main issue here is one of contract interpretation which this court can decide, viz., whether plaintiff contractually waived application of the Freeze Act as to the Tax Court case because he waived such application in the County Board matter. Further, unlike in MSGW, here there was no trial on valuation of multiple years before this court. Rather, the parties reached an agreement as to the two tax years which were pending in different venues. Thus, unlike in MSGW, here plaintiff was free to negotiate whether to waive application of the Freeze Act. All these differences render MSGW inapposite, obviating the need to consider its application here.

Based on the Freeze Act's fundamental premise of protection for the taxpayer and given that the statute clearly specifies the exceptions to its application, it is debatable whether an equity or penalty-based limitation on the Freeze Act should be imposed to deprive plaintiff relief for one of the freeze years. The plain language of the Freeze Act, its underlying legislative intent, and public policy must take precedence over any alleged interest of the taxing district (other than the statutorily mandated instances of inapplicability). See Riverview Gardens, Section One, Inc. v. Borough of North Arlington, 9 N.J. 167, 173 (1952) ("An assessment . . . may be 'frozen' . . . and remain so for the statutory period unless there were changes in the value of the property 'after the assessment date.'") (emphasis added); AVR Realty Co., 294 N.J. Super. at 298 (the Freeze Act "provides a clear and unequivocal mandate to taxing districts. They must accord the taxpayer the benefit of the Tax Court judgment for the two tax years following the last year encompassed by the judgment" unless the statutory exceptions apply.); Kentile Floors, Inc., 92 N.J. at 487, 491

("The Freeze Act is intended to protect not only substantial property owners, but also the small property owner for whom any litigation may represent a substantial financial burden."). It is then difficult to opine that a taxpayer's choice to use the benefit afforded under the Freeze Act is a mal-intended manipulation of the Freeze Act so that it should not apply.[7] Similarly, the concerns in MSGW as to a potential conflict between an assessor's duty to impose an annual assessment and the requirement of a mechanical carry-forward of an assessment under the Freeze Act are allayed by multiple safety valves. The taxing district can "claim . . . that a higher assessment is, in fact, warranted," by appealing a freeze year's assessment, Brae Ass'n, 21 N.J. Tax at 93;[8] negotiate a waiver of the Freeze Act;[9] or challenge the application for freeze relief by proving change in value.

*C. Change in Value Negates the Freeze Act's Application*

Relief under the Freeze Act is statutorily unavailable, if among other reasons, there was a change in value to the property. Township of Jackson v. Marsyll of B. B., 3 N.J. Tax 386, 390 (Tax 1981) (the Freeze Act "specifically excepts its application when there is a change in value, a fact not known until each annual assessing date."). A change in value is either "internal" or "external" but is one that "substantially and meaningfully increased the value of the property." Cumberland Arms Assocs. v. Twp. of Burlington, 10 N.J. Tax 255, 263 (Tax 1988).[10] Internal

---

[7] Here, for instance, it is difficult to agree plaintiff manipulated the Freeze Act's application when the settlement amount for tax year 2021 is higher than for tax year 2022.

[8] If litigants fail to prove that the assessment should be changed, then the "the Freeze Act valuation, mandated by statute, would remain effective." Brae Ass'n, 21 N.J. Tax at 94.

[9] If the reasoning in MSGW was to control, then a negotiated waiver would be superfluous, or even void.

[10] Logically, a taxing district would oppose application of the Freeze Act when the property's value has increased. See e.g., Moltich, 3 N.J. Tax at 159-60 (property owner sought the Freeze Act benefit on grounds no "upward change of value occurred during these two years.").

12

change refers to "easily ascertainable" physical improvements to the subject property such as "added floors," whereas external changes include "extreme economic changes within the close proximity of the subject property" or of immediate neighboring properties which increases the subject property's value. Id. at 263.

If a taxing district proves that "a change in value, in fact, occurred either between . . . the assessment dates for the base year and the first freeze year . . . or between . . . the assessment dates for the base year and the second freeze year," then the "operation of the Freeze Act" is precluded. Chevron U.S.A., Inc. v. City of Perth Amboy, 11 N.J. Tax 190, 194 (Tax 1990) (citations omitted). See also Handbook for New Jersey Assessors, 678-79, Division of Taxation, Local Property Branch (Oct. 2018) ("Where a change in value occurs after the previous year's assessing date so as to negate the Freeze Act, then the municipality, at the behest of the assessor, should file a conventional tax appeal with the County Board as per N.J.S.A. 54:3-21 to prove change in value.").

Here, plaintiff does not seek relief under the Freeze Act for tax year 2022, the first of the two freeze years, using tax year 2021 as the base year. Therefore, proving a change in value from October 1, 2020, to October 1, 2021, the assessment dates for the base year 2021 and tax year 2022, is not an issue.

The court is unpersuaded by the City's contention that, without more, the County Board's judgment for tax year 2022 evidenced a change in value after tax year 2021, which would negate the Freeze Act's application for tax year 2022, and thereby negate the Freeze Act's application to tax year 2023.[11] Undisputedly, there was a value determination by the County Board judgment for tax year 2022 which reflected a lower amount than the Subject's value reflected in the Tax

_____

[11] The issue of change in value was raised but declined to be considered in MSGW since the court ruled that the taxpayer cannot use the first litigated tax year as the base year. 18 N.J. Tax at 101.

Court's judgment for tax year 2021. The market data submitted by plaintiff in September of 2021 supported this reduction for tax year 2022. However, annual market changes generally do not constitute an external change for Freeze Act purposes. Cumberland Arms Assocs., 10 N.J. Tax at 267-68 ("Although the Freeze Act uses the words 'changes in value' it is obvious that the Legislature intended a change other than solely an increase in fair market value." The Legislature "did not intend" the quoted phrase to "include an increase in true value" in properties due to lower capitalization rates or "resulting solely from general district-wide inflation."). Thus, "presentation that the subject property's alleged increased value is the result solely of general inflationary trends" is not proof of an external change in value under the Freeze Act. Id. at 272. See also Mediterranean House v. Borough of Fort Lee, 7 N.J. Tax 528, 535 (Tax 1985) (the "Legislature did not intend that any change, no matter how slight, would work to avoid the freeze. The use of 'any change' as a standard could render the freeze act virtually useless and would clearly defeat its purpose, for rarely, if ever, does a property . . . not undergo a change in value from year to year."). Cf. Inganamort Bros. v. Borough of Fort Lee, 7 N.J. Tax 564, 577 (Tax 1984) (a "change in value should be . . . meaningful," and if property values "are rising at a relatively uniform rate throughout the taxing district" then it would militate against the Freeze Act's intent "to compare the value of one property with its value in a prior year, without taking such uniform increases of value into consideration."), aff'd, 202 N.J. Super. 87 (App. Div. 1985); Entenmann's Inc. v. Borough of Totowa, 19 N.J. Tax 505, 511 (Tax 2001) ("[A] change in highest and best use is not automatically the equivalent of the substantial and meaningful change in value required to defeat application of the Freeze Act" since "[i]t is only a change in value from the base year value that is significant for Freeze Act purposes."), aff'd, 21 N.J. Tax 182 (App. Div. 2003).

That the Subject's <u>assessment</u> for tax year 2023 is higher than the stipulated value for tax years 2021 or 2022 does not prove a change in value for purposes of the Freeze Act. That the parties agreed to different value amounts for each tax year 2021 and 2022 pursuant to which a judgment was issued does not render inapplicable either the Freeze Act, nor obviate the requirement that the taxing district must prove a substantial and meaningful <u>increase</u> in value.[12] To rule otherwise would nullify the statutory requirement in N.J.S.A. 54:51A-8(b) (where an assessor increases an assessment in "either of the" freeze year, then the municipality should prove "that the assessor acted reasonably in increasing the assessment"), and render redundant or legally irrelevant, a taxpayer's affirmative waiver, or affirmative application, of the Freeze Act.

**CONCLUSION**

For all the above reasons, the court grants plaintiff's application for Freeze Act relief for tax year 2023 using tax year 2021 as the base year.

---

[12] A change in value needs to be proven by the taxing district. N.J.S.A. 54:51A-8(b) ("burden of proof is on the taxing district to establish that the assessor acted reasonably in increasing the assessment" in a freeze year). Such proof must be for each freeze year. For example, the taxing district would have to show an increase in value from the base year's assessment date to the assessment date of freeze year one and an increase in value from the base year's assessment date to the assessment date of freeze year two. It cannot say that increase in value for one of the freeze years nullifies the application of the Freeze Act for other remaining freeze year.