ROYAL MANUFACTURING COMPANY, PROSECUTOR, v. BOARD OF EQUALIZATION OF TAXES OF NEW JERSEY ET AL.

Submitted March 19, 1908—Decided October 29, 1908.

On *certiorari* to a valuation for taxation of a manufacturing property as excessive, evidence examined and held to justify the valuation complained of.

On *certiorari*.

Before Justices REED, PARKER and VOORHEES.

For the prosecutor, *Tennant & Haight*.

For the defendants, *Francis V. Dobbins*.

The opinion of the court was delivered by

PARKER, J. The proceedings in this case are for the purpose of obtaining a review by this court of an alleged excessive

valuation for taxes in the year 1906 of a manufacturing property belonging to the prosecutor in the city of Rahway. After the original valuation by the local assessor the property was revalued by the county board of taxation, and from the new valuation by that board an appeal was taken to the state board of equalization of taxes which affirmed the valuation. The prosecutor then sued out a writ of *certiorari* addressed to the mayor and common council of the city of Rahway, but as it appeared in the record submitted to this court at that time that there had been a determination by the state board of equalization of taxes on the very question, and the proceedings and finding of that board were not brought up by the writ, the whole matter was sent back for the purpose of adding those proceedings and that finding to the record. *Royal Manufacturing Co.* v. *Rahway,* 46 *Vroom* 416. A second writ of *certiorari* was thereupon sued out and the state board was directed by rule of court to certify with the return the facts found by that board on the appeal taken and the grounds for its determination. Accordingly, the board returned the record of the appeal and certified that it had found as a fact that the valuation complained of "was not in its judgment in excess of what the property would have sold for at a fair and *bona fide* sale by private contract on May 20th, 1906," the date for assessing, and accordingly had dismissed the appeal and had affirmed the assessment, but that no record of the evidence was kept. Upon this return this court consolidated the two writs and gave the parties leave to take depositions to show what facts were proved before the state board, as a preliminary to examining the evidence taken under the first of the two writs. A number of depositions were taken under this rule to show what witnesses had testified before the state board and what their testimony had been. Objection was made to this manner of proof, but as all the facts claimed to have been presented to the state board are before us in other aspects, the point is not important.

There was, of course, no hearing before the local assessor, and there was no hearing before the county board. The original assessment made by the city officials was $3,000 for the

land and $12,000 for the buildings, including a house.    The county board, in the performance of the duty laid upon it by law of revising valuations throughout the county, employed a professional builder to examine this and other factory plants, and on his report raised the valuation of the buildings to $46,800, leaving the valuation of the land unchanged, and it was from this valuation that the appeal was taken to the state board, which, after hearing the testimony above referred to, gave judgment as already stated.

The prosecutor now makes two claims—*first,* that the assessment is in excess of assessments levied against other properties in Rahway, the true values of which respectively are greater than the true value of the property of the prosecutor; *secondly,* because the assessment in question is in excess of the true value of the property.

A number of reasons are advanced, but they all are fairly comprised within these two, excepting one point with regard to the alleged rejection of evidence by the state board, which will now be disposed of with the first reason.    So far as this claim is concerned, viz., that there are other properties in Rahway worth more than this one and valued at less, this would be a good ground for pressing for an increase of valuation for the other properties but not for reducing the valuation of the property in question.

Any taxpayer who considers that other property in the same taxing district is undervalued, is entitled to go to the county board and apply to have the valuation of such other property raised.    *Pamph. L.* 1906, *p.* 211, § 3; *Wayne* v. *Laflin & Rand Powder Co., ante p.* 175.

Since the passage of the act creating a county board of taxation (*Pamph. L.* 1906, *p.* 210) there has been no legal warrant, if there ever was any, for scaling down valuations of taxable property in this state by adopting a uniform percentage of actual value, although such was the general practice for years.    By that act the county boards are required to secure taxation of all property at its true value; so that the fact that the propery of A is assessed at its true value and the property of other taxpayers within the same district

is assessed below its true value, affords A no ground for demanding a reduction of his valuation, though .it does entitle him to apply for an increase in the valuation of the others. It, therefore, follows not only that the first reason was without any legal merit, but that the offer to prove before the state board on the appeal from the valuation of the prosecutor's property that other property was valued proportionately lower, was properly rejected by that board.

We come now to the second ground of complaint, which is that the property was assessed above its true value.

It appears from the testimony that Mr. Samuel Joseph, the president and principal organizer of the Royal Manufacturing Company, and at the time of the hearing the holder of nearly all its stock, had acquired a considerable tract of land in the northern part of Rahway on which stood a good-sized dwelling-house, and had built on this land six or seven factory buildings, specially adapted for the purposes of the business for which the corporation was organized, and which, although only one story in height, covered a good deal of ground. He also made certain improvements to the house at considerable expense. The cost of the house and land was $13,500. The cost of the repairs to the house seems to have been about $4,000.

The buildings were erected under contract by a building concern from Connecticut, and while it appeared that the work was defectively done in respect to the reinforced concrete called. for by the contract, the buildings had been accepted under an adjustment between the contractor and Mr. Joseph, and on May 20th, 1906, were entirely completed with the exception of some two or three hundred dollars' worth of work still to be done. Mr. Joseph admitted that the cost of the buildings had been $50,000 or more, and the representative of the Connecticut builders testified that the cost was between $50,000 and $60,000. There was no substantial dispute as to any of these facts, the controversy in the case being due to the claim of prosecutor, which was supported by considerable expert evidence, that a factory property is worth, for purposes of sale, ordinarily

about fifty per cent. of its cost, and that these particular buildings were of an unusual type, constructed especially for the purposes of the prosecutor and unsuited to ordinary manufacturing purposes, and, therefore, in case of sale would command a still less percentage, which was placed by one of the witnesses as low as about forty per cent.

In view of the construction of the buildings for the business of prosecutor, counsel claim that the decision of this court in *Turnley* v. *Elizabeth, ante p.* 42, is in point, and that in view of that decision the state board erred in giving undue weight to cost as a criterion of value and should have regarded only the testimony as to sale value, this being the test fixed by the statute.

We have given due consideration to this claim, and conceding its substantial correctness, are of opinion that the affirmance by the state board of the increased valuation is justifiable. In *Turnley* v. *Elizabeth, supra,* the subject of assessment was a private residence with expensive features to suit the whim of a wealthy owner, and which features added little or nothing to its market value; some, in fact, impairing it; but as the court said in that case: "The criterion established by the statute is a hypothetical sale." Now, at the date of assessment the buildings, though substantially completed, had not yet been occupied; the business of the prosecutor was a new enterprise, in which it was just embarking, and no question of disposing of the property as a second-hand factory plant had arisen or seemed likely to arise. While it may be true that a disused factory property is liable to depreciate in value from year to year, and may be unsalable as compared with other classes of property or with a factory property used by a going concern, neither the county board nor the state board was called on to treat a factory plant just completed on any such basis. Hence, most of the expert testimony as to the sale value of second-hand factory properties was irrelevant and useless. Moreover, an examination of the expert testimony shows that the witnesses for the most part viewed the property from the standpoint of its availability for being cut up into subdivi-

sions to be rented out as such with power supplied by the landlord. They claimed that a disused factory to secure a market should consist of one compact building of several stories and cellar, with complete steam heating and power plant, and be located in a city or town, quite disregarding the contingency of a purchaser looking for a one-story plant with detached buildings, such as is often seen in operation as a tannery, foundry or dyehouse, for example, which he might readily make over to suit his own purposes. On the other hand, we have the testimony of Mr. Joseph himself as to an actual sale of this very property by him to the corporation for $100,000 in stock. He says this was in September, when the buildings were finished, and that they were not so finished in May; but a careful examination of the testimony shows, as already stated, that the buildings were substantially completed in May, except the defective concrete, which was accepted. No fraud of the directors in overvaluing the property is shown or alleged; so that this figure may fairly be considered as the judgment of a willing buyer and a willing seller as to value. In view of this fact, and of the other testimony, we cannot say that there was any error of the state board in affirming the re-assessment, and its judgment will accordingly be affirmed here.