JACOB SIEGAL, MARY WEINSTEIN, ELI WALLACH AND MAY RAVITT, PLAINTIFFS-APPELLANTS, v. CITY OF NEWARK, RESPONDENT-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENT.

Argued April 24, 1962—Decided June 29, 1962.

*Mr. William S. Myers* argued the cause for plaintiffs-appellants (*Mr. Donald G. Marshall,* on the brief; *Messrs. Hannoch, Weisman, Myers, Stern & Besser,* attorneys).

*Mr. Harry A. Pine* argued the cause for respondent-respondent (*Mr. Richard A. Walsh,* on the brief; *Mr. Vincent P. Torppey,* attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Appellants claim their property was assessed for 1958 and 1960 above the "common level" of assessments of other real property.   In answers to interrogatories the city stated that "residential" property was assessed in those years at a "common level" of 40% of true value while "commercial and industrial" properties were assessed at a "common level" of 70%.   Appellants' property is in the latter category.   The Division of Tax Appeals ordered a reduction to 70% of true value.   We certified the further appeals to the Appellate Division.

Appellants' right to relief from the original assessments is not disputed.   The sole issue is the 'measure of it.   The city contends, and the Division of Tax Appeals agreed, that the reduction may not go below the level of assessment of other properties in the same class, whereas the taxpayers urge the assessments must be reduced to the level of the favored class, "residential," *i. e.,* 40%.   We are unable to agree with either view.

The city's position was heretofore advanced in *In re Kents,* 34 *N. J.* 21 (1961).   We had no occasion to decide its validity, but what we said anticipated what we now hold.   We there observed (at *pp.* 30–31):

"* * * Other suggestions are advanced by *amici curiae* who, upon their application made after the argument of the case, were permitted to file briefs.   It is urged that where the assessor uses different ratios for different classes of property, a reduction should not be ordered below the ratio the assessor applied to the class in which the parcel in litigation belongs.   So also, they suggest that

if land is generally assessed at a uniform level while improvements are assessed at another and even sundry levels according to classifications of such improvements, the several existing ratios should be separately applied to the component parts of the challenged assessment. Thus they urge that existing classifications, although contrary to law, should be recognized for the limited purpose of litigation of this kind. We know of no authority to support these proposals, see *Bemis Bros. Co. v. Claremont*, 98 *N. H*. 446, 102 *A*. 2d 512 (*Sup. Ct.* 1954) ; *Chastain's Inc. v. State Tax Commission*, 72 *Idaho* 344, 241 *P*. 2d 167 (*Sup. Ct.* 1952) ; *Anderson's Red & White Store v. Kootenai County*, 70 *Idaho* 260, 215 *P*. 2d 815 (*Sup. Ct.* 1950) ; *Sears, Roebuck & Co. v. State Tax Commission*, 214 *Md*. 550, 136 *A*. 2d 567 (*Ct. App.* 1957), but we need not now pass upon the questions thus hypothetically projected. We do however stress the principle that relief from unequal treatment will be granted, and this upon an appropriate basis requiring the individual taxpayer to prove no more than sensibly can be expected of him."

We think it plain that to limit relief to the level of assessment of properties in the same category would be to join in the very illegality which the *Constitution* prohibits. Taxable real property must be assessed on the same standard of value and at the same local rate. *Art.* VIII, § I, *par.* 1 of the *Constitution of* 1947. The *Constitution* thus bars classification of such property for preferential treatment. *Switz v. Kingsley,* 37 *N. J. 566* (1962), decided this week. The judiciary is bound equally with the other branches of government to honor the constitutional mandate.

The taxpayers' position errs on the other side, for under the facts a reduction to 40% would accord them a preference, no less violative of the constitutional rule.

It is true that these taxpayers are entitled to be treated equally with all others whose real property is taxable for local use. A remedy to enforce that right exists in the form of an action to compel the local assessor to assess *all* taxable property at the statutory standard of full true value. *Switz v. Middletown Township,* 23 *N. J.* 580 (1957) ; *Ridgefield Park v. Bergen County Board of Taxation,* 31 *N. J.* 420 (1960), appeal dismissed 365 *U. S.* 648, 5 *L. Ed.* 2d 857 (1961). That remedy, however, can be

prospective only. As to assessments already made, such relief would require vacating all assessments for the years in question and ordering the work redone. We have eschewed that course because of the public injury which would ensue if local government were denied or delayed in the receipt of operating revenues. *In re Kents, supra* (34 *N. J.*, at *p.* 30); *Ridgefield Park, supra* (31 *N. J.*, at *pp.* 427, 433); *Baldwin Construction Co. v. Essex County Board of Taxation*, 16 *N. J.* 329, 343 (1954); *cf. Taylor v. Louisville & N. R. Co.*, 88 *F.* 350, 374 (6 *Cir.*), *cert.* denied 172 *U. S.* 647, 43 *L. Ed.* 1182 (1898). We note, as a matter of interest, that in *Bettigole v. Assessors of Springfield, Mass.*, 178 *N. E.* 2d 10 (*Sup. Jud. Ct.* 1961), the court enjoined a city-wide assessment before it was actually made, but upon a finding that time remained for a proper assessment without the public hurt to which we referred.

Hence, as to assessments made, the injured taxpayer is remitted to a different remedy, to wit, a reduction of his assessment to the "common level" of assessments in the taxing district. The thesis is that the taxpayer is injured by so much of the tax bill as exceeds his *pro rata* share of the burden of local government. True, there may remain some residual harm in that the dollar value of the reduction may be recaptured in another year from all properties including that of the successful appellant. But perfect relief is inherently impossible. If the taxpayer pays no more than his fair share for the year in question, practical justice is achieved. Surely, if the taxpayer who appeals is permitted to pay less than his fair share, the injustice to those who were overassessed but did not complain would be compounded. Hence we held in *Kents* that an excessive assessment should be reduced to what it would have been if all taxable real property had been assessed equally. See *Bemis Bros. Co. v. Claremont*, 98 *N. H.* 446, 102 *A. 2d* 512 (*Sup. Ct.* 1954); *cf. Taylor v. Louisville & N. R. Co., supra* (88 *F.*, at *p.* 374); *Fletcher Paper Co. v. City of Alpena*, 160 *Mich.* 462, 125 *N. W.* 405 (*Sup. Ct.* 1910).

None of the cases cited by the taxpayers supports the proposition that an excessive assessment should be reduced to the level of the most favored class when to do so would relieve the taxpayer of a part of his *pro rata* share of the total burden. Cases will be found in which a discrete class of property, usually utility property, was assessed at a level above the level found to have been applied to other properties generally, and in which it was held or assumed that the assessments should be reduced to the level of the other assessments. See *Greene v. Louisville & Interurban R. R.*, 244 *U. S.* 499, 61 *L. Ed.* 1280 (1917); *Washington Water Power Co. v. Kootenai County*, 270 *F.* 369, modified 273 *F.* 524 (9 *Cir.* 1921); *Taylor v. Louisville & N. R. Co.*, *supra* (88 *F.* 350); *Mobile & O. R. Co. v. Schnipper*, 31 *F. 2d* 587 (*E. D. Ill.* 1929); *White River Lumber Co. v. State*, 175 *Ark.* 956, 2 *S. W. 2d* 25 (*Sup. Ct.* 1928), affirmed on other grounds 279 *U. S.* 692, 73 *L. Ed.* 903 (1929); *People ex rel. McDonough v. Grand Trunk W. R. Co.*, 357 *Ill.* 493, 192 *N. E.* 645 (*Sup. Ct.* 1934); *Chicago, B. & Q. R. Co. v. Board of Comm'rs*, 54 *Kan.* 781, 39 *P.* 1039 (*Sup. Ct.* 1895). But none of those cases discussed the problem before us. It was simply accepted that the stated relief would be appropriate. The thought probably was that the agency which assessed the property in question would likely assess *all* such property at the lower level in response to a decision which laid down the controlling principle. Another explanation may be that the cases were so presented that the general level of assessment of other property fairly qualified as the "common level" within our concept of the term.

*Baldwin Construction Co. v. Essex County Board of Taxation*, *supra* (16 *N. J.* 329) is not inconsistent with our view. There assessments in selected areas were revised upward upon the order of the county board. The court viewed the proofs to establish that the county board did thereby "nullify the pattern of equality set by the local

assessors through the medium of a uniform assessment ratio and lay an undue burden upon the plaintiff land-owners" (*p.* 339). In holding that the challenged increases were invalid, the court acted upon the stated postulate that all of the assessments in the municipality had been made "according to a common ratio of value" (*p.* 338), and hence the cancellation of the increases restored the assessments to that level.

In *Kents* we recognized that the "common level" can be at best a tool toward practical equality. We appreciated that perfection could not be achieved by an assessor despite his most conscientious effort. There must inevitably be some errors of judgment, and even if there were none, still the selling prices of properties could hardly be expected to parallel precisely any uniform level of assessment. Hence we would not fix an unyielding concept of the common level to which an excessive assessment should be reduced. We recognized, for example, that if the sales data used to find the average ratio showed some percentage of true value about which the bulk of individual assessments tended to cluster, that percentage might be accepted as the common level (34 *N. J.*, at *p.* 27); or that if a local assessor consciously sought to employ a fixed ratio throughout the taxing district, it may be that that level should be accepted without more as the standard for relief (34 *N. J.*, at *p.* 30). The facts of this case do not invite consideration of either of the possibilities just mentioned.

Plaintiffs urge that the level of assessment of "residential" property be accepted as the common level because most of the line items on the assessment rolls are in that category. In that category there were 35,368 parcels, constituting 68% of the total, whereas in the "commercial and industrial," the number was 13,442, being but 26% (the remaining 6% was "vacant land" as to which no level of assessment appears in the proof). But the city replies that "commercial and industrial" assessments aggregated $398,920,600, whereas the more numerous "residential" assessments totaled

$169,066,500. Thus it is clear that in terms of the distribution of the burden of government, the residential level of 40% is hardly an appropriate index. Moreover, while the city concedes that 40% is the "common level" as to "residential" properties, it does not say that 40% is indeed the level at which "residential" properties were uniformly or generally assessed. There is no claim that the assessor in fact sought to assess all residences at that percentage. All that appears is that the city believed 40% to be the "common level" and that the figure was used with respect to "added assessments." Hence 40% may be but an "average ratio"; the underlying data are not supplied. We would be unworldly if we did not note the fair likelihood that within the residential category the individual assessments spanned the usual wide range, with 40% being merely a composite result. Thus if a reduction were here made to 40%, the revised assessment would likely comport with the assessments of only some of the residential properties in the city.

In fact, appellants do not accept the figures of 40% and 70% as accurate statements of the "common level" of either of the categories. In their briefs they tell us that the sales-ratio studies of the State Director of Taxation reveal average ratios for "residential" of 38.40% and 36.81% for 1958 and 1960 respectively; that the average ratios for "commercial and industrial" were 56.13% and 54.35% for those years; and that the average ratios found by the Director for all classes of real property were 49.29% in 1958 and 47.68% in 1960. These figures would buttress our belief that 40% could not be accepted as the level at which each parcel of real property would contribute its just share of the cost of government.

Rather we are satisfied the factual pattern brings the case within the holding of *Kents* that the average ratio for all real property is appropriate evidence of the common level to which reductions should be granted, absent other proof suggesting that the average ratio should be modified. (See *Kents, supra,* 34 *N. J.,* at *pp.* 31–32.) The judgments

are reversed and the matters remanded to the State Division of Taxation for further proceedings in conformity with this view.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.