ARTHUR GREENWALD AND MARIANNE GREENWALD, HIS
WIFE, PLAINTIFFS, v. BOROUGH OF
METUCHEN, DEFENDANT.

Tax Court of New Jersey

March 7, 1980.

*James B. Smith* for plaintiff.
*Martin A. Spritzer* for defendant.

ANDREW, J. T. C.

Plaintiffs, taxpayers, claim that the local property tax assessment on their residence is in excess of assessments of comparable realty located within one block of their home and therefore seek relief from this inequality or discrimination in assessment practice within the Borough of Metuchen.

Plaintiffs own a home at 12 Mark Circle, identified as Block 98–1, Lot 42, on the tax map of the Borough of Metuchen. The borough assessor assessed their property for the tax year 1976 as follows:

| | |
|---|---|
| Land | 19,600 |
| Improvements | 85,400 |
| Total | 105,000 |

An appeal was taken to the Middlesex County Board of Taxation and the board affirmed the assessment.

At the pretrial conference before this court it was agreed that a plenary hearing would be unnecessary in light of the fact that plaintiffs intended to rely on the submission of six assessments

of comparable property in their effort to establish discriminatorily prohibited assessment treatment, and defendant agreed that this would constitute a stipulation of facts. The stipulation as submitted by plaintiffs was as follows:

Plaintiffs' home was assessed at $105,000.00 ($19,600.00 for land, $85,400.00 for improvements) in 1976. Yet, that same year, other homes in the same tax block and in the same neighborhood were assessed as follows:

| Owner | Block & Lot | Land Assessment | Building Assessment | Comparison with Greenwald |
|-------|-------------|-----------------|---------------------|---------------------------|
| Rabb | 98-1 39 | $19,100.00 | $57,900.00 | Better land, Comparable house |
| Meltzer | 98-1 41 | $17,700.00 | $53,600.00 | Better land, Comparable house |
| McGuire | 98-1 46 | $19,000.00 | $76,000.00 | Much more elaborate house & grounds with swimming pool |
| Goodman | 98-1 44 | $21,200.00 | $61,800.00 | Better land, somewhat larger house |
| Barry | 98-1 43 | $17,000.00 | $66,800.00 | Comparable land, similar house |
| Frings | 98-1 47 | $29,400.00 | $89,550.00 | Double lot with pool & elaborate house |

It should be noted that plaintiffs' only prayer for relief was posited on the question of inequality in assessment. There was no claim and plaintiffs eschewed any reference to an overvaluation i. e., that the assessment exceeded the fair market value of their property.

The issue presented is relatively narrow. Can a taxpayer establish inequality or discrimination in assessment by proving that his neighbor's house or a few of his neighbors' houses are assessed at a lower value? This requires a determination of what is the test for inequality. The court has observed on numerous occasions that taxpayers have sought to reduce their real property assessments by reference to their neighbor's assessment and therefore the subject should be discussed in some

detail. The court has also noted that some county boards of taxation specifically encourage taxpayers to present evidence of assessments of comparable property by requiring a taxpayer to list those assessments upon which he intends to rely in the petition of appeal before the county board or be precluded from using such evidence due to such failure.

The Legislature has provided two avenues of appeal for a taxpayer if he feels aggrieved by assessments in his taxing district. *N.J.S.A.* 54:3–21 provides in pertinent part:

> A taxpayer feeling aggrieved by the assessed valuation of his property or feeling that *he is discriminated against by the assessed valuation of other property* in the county . . . may . . . appeal to county board of taxation . . .. [Emphasis supplied]

In this matter plaintiffs rely upon the latter avenue, *i. e.*, they feel discriminated against by the assessed valuation of other property. The Legislature provided abstractly an appeal process but did not provide guidance as to the manner in which to establish discriminatory treatment in assessment. It should be stated parenthetically that subsequent to the tax year in question the Legislature did provide a method of establishing discrimination and the relief to be granted, by the enactment of *N.J.S.A.* 54:3–22 and *N.J.S.A.* 54:2–40.4, commonly referred to as Chapter 123, but this did not take effect until 1978 and is therefore of no assistance in the present matter.

In discrimination in assessment cases the theoretical object is to test whether the taxpayer has been called upon to pay more than his proper fractional share of the total tax burden. *In re Appeals of Kents, 2124 Atlantic Ave., Inc.* 34 *N.J.* 21, 166 *A.*2d 763 (1961). Plaintiffs contend that all they need establish to entitle them to a reduction in assessment is that some other property of the same description is valued on the assessment rolls at a less proportionate value than their own. Once having shown this, it follows that they are entitled to a reduction of the assessment of their property to correspond with the assessment fixed on the lower proportionate valuation.

The obvious result of this position is that every property owner could demand that the assessment of his property should

be reduced to a valuation equal to the lowest valuation of any similar property on the assessment rolls, situate anywhere in the taxing district, although his own property was not assessed in excess of its true value. This would be true even though it was not made to appear, by reason of the underassessment of the particular property with which his property was compared, that plaintiff would be required to pay more than his proper share of the total tax burden.

It must be conceded that in the nature of things it is not possible that all assessments will represent the precise true value of the property valued. Mathematical perfection in local property taxation is not obtainable. *In re Appeal of Kents, supra* at 32, 166 *A*.2d 763. If a particular parcel is underassessed, another may be correspondingly overassessed. It does not follow that a taxpayer will be harmed by an underassessment of some parcel belonging to another taxpayer. The mere fact that plaintiffs can show that their residence is assessed higher than their neighbors' does not alone show that they are aggrieved or that they will be compelled to pay more than their fair share of the total tax burden. *Cf. Siegal v. Newark*, 38 *N.J.* 57, 183 *A*.2d 21 (1962).

The assessments to which plaintiffs point may well be erroneously made as the result of a mistake or misjudgment. Assume a property owner has six neighbors who were assessed at 50% of true value, while all other properties in the taxing district were assessed at full true value. Plaintiffs' claim that they should have their assessment revised to make it more fairly proportionate to the assessments of the six neighboring parcels, might, on first reaction, seem to achieve a substantially just result. Actually, a reduction would induce a greater disproportion because to reduce plaintiffs' assessment to 50% of true value would simply increase from six to seven the taxpayers who were being unduly favored at the expense of all other property owners in the taxing district. The only true solution in this hypothetical case would be to increase the six underassessments to full true value. As is often the case, as here, the taxpayer misunderstands the nature of a claim of discrimination in tax matters and as a

result the proofs fall far short of a demonstration of inequality. *Continental Paper Co. v. Ridgefield Park,* 122 *N.J.Super.* 446, 300 *A.2d* 850 (App.Div.1973); *Bonbright, Valuation of Property,* 503 (1937).

■ If it follows that plaintiffs cannot establish inequality in assessment by reference to assessments of comparable property, then how does one establish that he is "discriminated against by the assessed valuation of other property"? *N.J.S.A.* 54:3–21. Prior to the *Kents* case, *supra,* a taxpayer claiming discrimination was theoretically called upon to show the value of his property and the value of all other taxable property in the district reflected in the aggregate in order to establish that the fraction he was called upon to pay was more than the true fraction he should pay. Merely stating this proposition is to assert the impossibility of meeting this standard of proof. In *Kents* Chief Justice Weintraub developed the history of a lack of an effective remedy for inequality in assessment. He pointed to *Royal Mfg. Co. v. Board of Equalization of Taxes,* 76 *N.J.L.* 402, 70 *A.* 978 (Sup.Ct.1908), aff'd 78 *N.J.L.* 337, 74 *A.* 525 (E. & A.1909) which held that a taxpayer could not have his assessment reduced but could seek the illusory remedy of having all underassessments increased. In *Kents* our Supreme Court determined that taxpayers must be afforded a practical method of demonstrating inequality in assessment. In order to establish a case of actionable discrimination a taxpayer must demonstrate that the real property in the taxing district *generally* was assessed at less than true value, what that level (common level) was and the true value of the taxpayer's property to which the common level or ratio would be applied if the taxpayer's assessment ratio was substantially in excess of the common ratio or level. Absent a common level in the municipality, the taxpayer could resort to the average ratio established by the Director of Taxation as that percentage of full true value at which property generally was assessed. *In re Appeal of Kents, supra; Feder v. Passaic,* 105 *N.J.Super.* 157, 251 *A.2d* 457 (App.Div.1969); *Piscataway Associates v. Piscataway Tp.,* 73 *N.J.* 546, 376 *A.2d* 527 (1977).

In *Siegal v. Newark, supra,* the Supreme Court was called upon to determine if the concept of common level meant common level for a particular class of property or common level for all real property. The City of Newark was assessing residential properties at a common level of 40% of true value while commercial and industrial properties were assessed at a common level of 70%. Plaintiffs' property was in the commercial and industrial category and they sought a reduction in assessment to the level of residential properties, *i. e.,* 40%. They contended that the level of assessment of residential property should be accepted as the common level because most of the individual properties on the assessment rolls were in that category. There were some 35,368 parcels in the residential category which constituted 68% of the total number of properties within the city. The court rejected this contention, saying that 40% (the level of residential assessment) could not be accepted as the level at which each parcel of real property would contribute its fair share of the burden of government. *Id.* 38 *N.J.* at 64, 183 *A.*2d 21. The conclusion was that the average ratio or common level for *all* real property must be utilized to provide relief from unequal treatment. If, in a discrimination matter, resort cannot be had to the ratio of all sales within a particular class, such as residential, and which may well contain hundreds of sales from which sales ratios can be determined, *a fortiori* does it not follow that a few individual assessments of comparable properties establish even less.

As can readily be seen, a plaintiff must first establish the true value of his property with independent proofs. If not, there is nothing to which a common level or ratio can be applied. In the present matter there was no evidence of the value of the subject property. Such proof is basic. Even if the court were to find unequal treatment there is no way to afford relief. Plaintiffs' contention therefore falls for two reasons: (1) there is no proof of true value of the subject property and (2) there is no proof of a common level of assessment or the lack of a common level, in which event the Director's ratio might apply.

236

■ Proof of assessments of comparable property short of showing a common level of assessment or the absence of a common level is inadequate to sustain a claim of discrimination. The spirit of our taxing statutes demands equal treatment for all taxpayers, but in the absence of sufficient proof demonstrating generally unequal treatment this court has no alternative but to affirm the judgment below. *L. Bamberger & Co. v. Division of Tax Appeals*, 1 *N.J.* 151, 62 *A.*2d 389 (1948); *Passaic v. Gera Mills*, 55 *N.J.Super.* 73, 150 *A.*2d 67 (App.Div.1959), certif. den. 30 *N.J.* 153, 152 *A.*2d 171 (1959).

Judgment will be entered by the Clerk of the Tax Court affirming the judgment of the Middlesex County Board of Taxation.