LASSER, P. J. T. C.
This is an action by taxpayer to review the 1978, 1979 and 1980 real property tax assessments on its garden apartment complex located at 575 Main Street, Chatham Borough, and known as Block 29, Lots 4 and 30. Taxpayer’s property was assessed at $675,000 for 1978. The Morris County Board of Taxation reduced the assessment to $573,600. The 1979 assessment of $573,600 reflected the 1978 county board of Taxation reduction. For 1980 the taxing district adopted a municipal-wide revaluation and assessed the property at $2,062,100.
Taxpayer filed an appeal from the 1978 county tax board judgment to the Division of Tax Appeals. This appeal was transferred to the Tax Court pursuant to N.J.S.A. 2A:3A-26. Taxpayer filed an appeal to the Tax Court from the 1979 county board of taxation judgment and filed a direct appeal to the Tax Court contesting the 1980 assessment pursuant to N.J.S.A. 54:3-21. The assessments in question are as follows:
Original County Tax
1978 Assessment Board Judgment
Land $163,800 $163,800
Improvements 511,200 409,800
Total $675,000 $573,600
*672 1979 Original Assessment County Tax Board Judgment
Land $163,800 $163,800
Improvements 409,800 409,800
Total $573,600 $573,600
1980
Land $524,900 Direct
Improvements 1,537,200 Appeal
Total $2,062,100
The tax rates, ratios and effective tax rates are as follows:
Tax Rate Ratio Effective Tax Rate
1978 $6.58 40%[1] $2.63
1979 6.99 39%[1] 2.73
1980 2.00 100% 2.00
The subject property is a two-story, brick veneer garden apartment complex built in 1958 on a parcel of land approximately four acres in size, containing 65 apartments (57 one-bedroom units and 8 two-bedroom units) and 42 garages.
Taxpayer’s appraisal expert valued the property solely by use of the income approach. He rejected the market approach due to an absence of comparable sales. He rejected the cost ap *673 proach because he reasoned that buyers do not consider the replacement cost when purchasing investment property.
The appraisal expert who testified on behalf of the taxing district for the years 1978 and 1979 also relied solely on the income approach. A second appraisal expert testified for the taxing district for the year 1980. This expert relied on both the income and cost approaches.
The value conclusions of the three appraisers are as follows:
Taxpayer Taxing District
1978 $1,247,600 $1,463,500
1979 1,222,300 1,474,500
1980 1,360,900 2,000,000[2]
A summary of the income approach calculations of the three experts is as follows:
1978 Taxpayer Taxing District
Gross rental income $267,192 $275,639
Laundry income 520 520
Vacancy reserve - 8,016(3%) - 5,513(2%)
Effective gross income $259,696 $270,645
Expenses
Fuel 21,002 21,022
Electric and gas 7,062 7,062
Water 971 971
Insurance 2,154 2,154
Wages 11,781 11,781
Painting, repair and maintenance 21,895 20,200
Management 12,985 13,532
Reserve for replacements 6,680 3,840
Supplies 1,955 1,300
*674 1978 Taxpayer Taxing District
Garbage 2,378 2,378
Miscellaneous 2,672 2,700
Total expenses 91,535 86,940
Net income 168,161 183,705
Land value 325,000 422.500
Capitalization rate - land .1163 .1113
Income to land 37,798 47,024
Income to improvements 130,363 136,681
Capitalization rate - improvements .1413 .1313
Land value 325,000 422.500
Improvements value 922,600 1,041,000
Total value $1,247,600 $1,463,500
1979 Taxpayer Taxing District
Gross rental income $284,856 $290,104
Laundry income 520 520
Vacancy reserve - 8,546(3%) - 5,802(2%)
Effective gross income $276,830 $284,822
Expenses
Fuel 22,809 22,809
Electric and gas 7,718 7,718
Water 1,192 1,192
Insurance 2,249 2,249
Wages and payroll tax 13,035 11,850
Painting, repair and maintenance 31,708 21,300
Management 13,842 14,241
Reserve for replacements 7,121 3,840
Supplies 4,815 1,400
Garbage 2,340 2,340
Miscellaneous 2,849 2,800
Total expenses $109,678 $ 91,739
Net income 167,152 193,083
Land value 325,000 468,000
Capitalization rate - land .1184 .1173
*675 1979 Taxpayer Taxing District
Income to land 38,480 54,896
Income to improvements 128,672 138,187
Capitalization rate - improvements .1434 .1373
Land value 325,000 468,000
Improvements value 897,300 1,006,500
Total value $1,222,300 $1,474,500
1980 Taxpayer Taxing District
Gross rental income $306,312 $317,088
Laundry income 520 520
Vacancy reserve - 9,189(3%) - 3,170(1%)
Tenants’ property tax rebate - 2,335
Effective gross income $295,308 $314,438
Expenses
Fuel 24,885 24,885
Electric and gas 8,173 8,173
Water 1,087 1,087
Insurance 3,974 3,974
Wages and payroll tax 13,915 9,911
Painting, repair and maintenance 30,573 16,098
Management 14,765 9,433
Reserve for replacements 7,658 8,422
Supplies 2,197
Garbage 2,615 2,615
Miscellaneous 3,063 3,170
Total expenses $112,905 $87,768
Net income 182,403 226,670
Land value 325.000 524.900
Capitalization rate - land .115 .115
Income to land 37,375 60,363
Income to improvements 145,028 166,307
Capitalization rate - improvements .14 .135
Land value 325.000 524.900
Improvements value 1,035,900 1,231,900
Total value $1,360,900 $1,756,800
*676 The cost approach used by the taxing district’s expert for the year 1980 resulted in a value for land and improvements of $2,062,100, of which $1,537,200 was the value of the improvements. There is no explanation for the substantial difference between this expert’s income and cost approaches. Garden apartment sales in the area would have been helpful but none were included in the evidence.
I have considered the cost approach testimony for 1980 but have chosen to place greater reliance on the income approach since the subject garden apartment complex is an income-producing property. Rudd v. Cranford Tp., 4 N.J.Tax 236, 243 (Tax Ct. 1982).
Taxpayer’s expert valued the land at $325,000, or $5,000 an apartment unit. Taxing district’s expert valued the land at $422,500 for 1978 ($6,500/unit), $467,000 for 1979 ($7,200/unit) and $524,900 for 1980 ($8,075/unit). There is very little evidence, other than the unsupported opinions of the experts, on which to base a land value. The first taxing district expert referred generally to land sales in the Chatham area and in particular to two sales of condominium units at $7,200 and $10,000 a unit. Apparently the appraisal expert for the taxing district testified to a land value of $5,000 a unit at the 1978 county board of taxation hearing, and the taxpayer’s expert adopted this value. Testifying in the Tax Court to the 1980 value, taxing district’s appraisal expert stated that he had examined apartment house land sales in the area and concluded that the value of the subject land as of October 1, 1979 was $8,075 a unit.
I recognize the general increase in land values during the period 1977-1979, as reflected by the testimony of the experts for the taxing district, but in the interest of stability of assessment I find that the land value as of the respective assessing dates is $7,000 a unit, for a total of $455,000.
I conclude that the gross rental value of the property on the respective assessing dates was that testified to by taxpayer’s expert, his figures being based on the actual rent rolls and there *677 being no convincing testimony that the management was not charging market rent. The vacancy factor testimony ranged from 1% to 3%. I find that 2% is reasonable, considering the lower actual vacancy and the desirability of the property.
For 1980 the taxpayer has deducted from gross income $2,335 paid by taxpayer to its tenants pursuant to the Tenants’ Property Tax Rebate Act, N.J.S.A. 54:4-6.2 et seq. This act requires a landlord to pay tenants 65% of the amount by which the taxes for the subject year are less than the taxes for the base year under the act. Thus, his total obligation is to pay the assessed taxes to the taxing district and, in addition, to pay the tax rebates to his tenants. The actual taxes assessed are reflected in the income approach by including the effective tax rate in the capitalization rate. The rebates paid to the tenants must be accounted for either by crediting them against the rental income or by deducting them as an operating expense. No portion of any tax reduction resulting from this tax appeal is required to be paid to the tenants by the landlord. N.J.S.A. 54:4-6.3(b). Therefore, in the subject case I have deducted the $2,335 in arriving at the effective gross income for 1980.
The treatment of the tenants’ property tax rebate in the case of Skytop Gardens v. Sayreville, 3 N.J.Tax 187 (Tax Ct. 1981), was based on evidence presented in that case and is limited to that case. Skytop treated the tenants’ property tax rebate as a variable and adjusted for it by changing the tax rate portion of the capitalization rate. The tenants’ property tax rebate in this case is not a variable. It is a fixed amount which will not change if the 1980 assessment changes. Therefore it must be treated as a deduction from income, not as an element in the capitalization rate.
The expense items in contest are wages, repairs and painting, management, reserve for replacements and supplies. From the testimony I conclude that the actual wages and wage taxes used by taxpayer’s expert are proper; that repairs and painting should be 8% of effective gross income (EGI); that management should be 5% of EGI, and that the reserve for replacements (air *678 conditioners, stoves, refrigerators and dishwashers) should be 2% of EGI. I have stabilized supplies at $1,300, $1,400 and $1,500, and miscellaneous expenses at $2,700, $2,800 and $3,100 for the years 1978-1980, respectively.
The capitalization rates used by the experts in their income approach calculations are:
Taxpayer Taxing District
1978
Return .0900 .0850
Recapture .0250 .0200
Real estate tax .0263 .0263
Total .1413 .1313
1979
Return .095 .09
Recapture .025 .02
Real estate tax ■0234 ■0273
Total .1434 .1373
1980
Return .095 .095
Recapture .025 .02
Real estate tax .02 .02
Total .14 .135
I conclude that the capitalization rates used by the taxing district’s experts in their income approach calculations are more appropriate because of the high quality of the property. This quality will result in a greater demand for the property in the market.
Based on the foregoing, I find that the following income and expenses are to be used to calculate the value of the property:
1978 1979 1980
Gross rental income $267,192 $284,856 $306,312
Laundry income 520 520 520
*679 1978 1979 1980
Vacancy reserve (2%) - 5,344 - 5,697 - 6,126
Tenants’ property tax rebate -0- -0- - 2,335
Effective gross income $262,368 $279,679 $298,371
Expenses
Fuel 21,002 22,809 24,885
Electric and gas 7,062 7,718 8,173
Water 971 1,192 1,087
Insurance 2,154 2,249 3,974
Wages and payroll tax 11,781 13,035 13,915
Painting, repairs and maintenance (8%) 20,989 22,374 23,870
Management (5%) 13,118 13,984 14,919
Reserve for replacements (2%) 5,247 5,594 5,967
Supplies 1,300 1,400 1,500
Garbage 2,378 2,340 2,615
Miscellaneous 2,700 2,800 3,100
Total expenses $ 88,702 $ 95,495 $104,005
Net income $173,666 $184,184 $194,366
For The Year 1978
The calculation of the 1978 value using the chapter 123 ratio to derive the effective tax rate is as follows:
Net income $173,666
Land requires ($455,000 x .1113) 50,642
Net to improvements $123,024
Capitalized at .1313 936,969
Land value 455,000
Total value $1,391,969
The parties agree that the chapter 123 ratio of 40% and the common level range of 34% to 46% should be applied for the year 1978. The assessment of $675,000 is 48.5% of the value of $1,391,969 and is therefore above the 46% upper limit of the common level range. This calculation is properly made by using *680 the original assessment of $675,000, not the assessment as reduced to $573,600 by the county board of taxation. Rumson v. Haran, 3 N.J.Tax 590 (Tax Ct. 1981). The assessment must
therefore be reduced to 40% of the value. The proper assessment for 1978 at the agreed 40% ratio is:
Land $182,000
Improvements 374,800 (rounded)
Total $556,800 (rounded)
For The Year 1979
The calculation of the 1979 value using the chapter 123 ratio to derive the effective tax rate is as follows:
Net income $184,184
Land requires ($455,000 x .1173) 53,372
Net to improvements $130,812
Capitalized at .1373 952,746
Land value 455,000
Total value $1,407,746
The 1979 assessment of $573,600 is 40.8% of the value of $1,407,746. The 1979 chapter 123 ratio is 39% and the common level range is 33% to 45%. Inasmuch as the assessment is less than the 45% upper limit of the common level range, there can be no relief under chapter 123.
Taxpayer alleges that, instead of applying the chapter 123 formula, an unweighted, unclassified ratio calculated from a single year’s sale data should be applied to the value of the property to afford relief from discrimination. Taxpayer contends that a ratio calculated on an unweighted, unclassified basis from sales data for the single year ended June 30, 1978 or for the single year ended June 30, 1979 better reflects the common level of assessment. He has presented evidence of a ratio of 35.09% based on sales data for the period July 1,1977 to June 30, 1978, and a ratio of 29.79% based on sales data for the *681 period July 1, 1978 to June 30, 1979. October 1, 1978 is the assessing date for 1979, the tax year in question.
Taxpayer did not directly attack the chapter 123 ratio. Taxpayer neither alleged nor offered proof of an error in the computation of the chapter 123 ratio, a paucity of sales for the sample period, or any other defect which would make the chapter 123 ratio unuseable. The thrust of its case was to offer alternative ratios calculated from different data and on a different basis than the chapter 123 ratio.
An analysis of the sales data for the year ended June 30,1978 indicates that there were 163 sales of 1-4 family houses, 2 sales of vacant land and 6 sales of commercial property. The ratios of assessment to sale price for the bulk of the sales clustered between 30% and 39%. In the year ended June 30, 1979 there were 160 sales of 1-4 family houses, 1 sale of vacant land and 4 sales of commercial property, and the ratios of assessment to sale price for the bulk of the sales clustered between 25% and 34%. There are a total of approximately 2,300 properties assessed in the taxing district. The coefficient of deviation of approximately 10 for 1-4 family houses for each of these years confirms this cluster range. The coefficients of other classes range from 2.35 to 26.19 but are not significant because they are derived from few sales.
From this data I conclude that the majority of the 1-4 family house ratios of assessment to sale price fall within the 25% to 39% range for the two-year period, but I can come to no conclusion with respect to the ratios of assessment to sale price of other types of property in the taxing district.
In chapter 123 the Legislature has provided a formula for determining whether an assessment is discriminatory and, if discrimination is found under the formula, for granting relief.
Chapter 123 uses a weighted, classified and averaged ratio promulgated on April 1 of the tax year from sales data through *682 June of the pretax year.[3] This ratio cushions year-to-year changes by an averaging process utilizing sales ratio data for the one-year period ending June 30 of the pretax year with data for prior years. This ratio separately calculates the ratios of each class by a method which gives greater weight to higher priced sales. Willingboro Tp. v. Burlington Cty. Bd. Tax., 62 N.J. 203, 213, 300 A.2d 129 (1973).
The unweighted, unclassified ratio urged by taxpayer uses sales data for only a one-year period, gives equal weight to each sale and averages all sales together regardless of their class.
The issues presented by taxpayer are:
1. Whether a ratio reflecting sales data for a one-year period or for more than a one-year period should be used;
2. Whether a weighted, classified ratio or an unweighted, unclassified ratio should be used, and
3. Whether taxpayer has overcome the strong presumption in favor of the legislative remedy of chapter 123.
Our courts have recognized a constitutional right to uniform property tax assessment within a taxing district. In Re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 166 A.2d 763 (1961); Piscataway Assoc., Inc. v. Piscataway Tp., 73 N.J. 546, 376 A.2d 527 (1977). “Chapter 123 was in large part a legislative response to the problem of proving a discriminatory assessment in cases where Kents relief is sought.” Devonshire Develop. Ass’n. v. Hackensack, 2 N.J.Tax 392, 398, 184 N.J.Super. 371, 446 A.2d 201 (Tax Ct. 1981). “Chapter 123 relief is not an alternative to the constitutional right to claim discrimination found in Kents, but it is an answer to Chief Justice Weintraub’s plea for a legislative response to the dilemma of providing a remedy in ‘ratio’ cases.” Id. at 403,184 N.J.Super. 371, 446 A.2d 201. This court has held that there is a strong presumption in favor of the application of chapter 123 in the interest of assess *683 ment stability. 525 Realty Holding Co. v. Hasbrouck Heights, 3 N.J.Tax 206, 216 (Tax Ct. 1981). Nevertheless, this presumption can be refuted by adequate proof. Devonshire at 404, 184 N.J.Super. 371, 446 A.2d 201.
My calculations from the figures in evidence indicate that there is a negligible difference between the one-year ratios for 1978 and 1979, whether they are calculated on an unweighted, unclassified basis or on a weighted, classified basis. Therefore, the difference in issue is the multi-year data used as the basis for the chapter 123 ratio and the one-year data used as the basis for the taxpayer’s ratios. My review of the evidence leads me to conclude that the use of a ratio based on sales data for a single year is not justified. Stability of assessment requires that more than one year’s data be used. The Senate, County and Municipal Government Committee Statement attached to the 1979 amendment to chapter 123, Assembly No. 1492 — L.1979, c. 51, which changed the ratio from a one-year unweighted, unclassified ratio to a weighted, classified multi-year averaged ratio, states: “This averaging method is designed to avoid abrupt changes in ratio from year to year and to avoid undue influence of inadequate sales samples in any single year.”
Mathematical perfection in assessment is unobtainable. Similarly, perfect relief from discrimination is also inherently impossible. Siegal v. Newark, 38 N.J. 57, 61, 183 A.2d 21 (1962). The chapter 123 formula provides practical justice by use of multiyear sales data and a range of permitted variation rather than an exact ratio to test whether discrimination exists.
Taxpayer has not overcome the strong presumption in favor of the chapter 123 ratio by advancing sufficient proof that the chapter 123 ratio should be replaced with another ratio. There is no proof of any inaccuracy in the chapter 123 ratio. The single year unweighted unclassified ratios for the two pretax years are 39.41% for 1977 and 35.09% for 1978, for an average of 37.25%. If the 1979 single-year ratio of 29.79% is included in the *684 averaging, the three-year ratio becomes 34.76%. The majority of individual ratios of assessment to sale price for the two years 1978 and 1979 range from 25% to 39%. Presumably the range moves higher in the 1977 year. Neither these average ratios nor the ratio ranges are sufficiently divergent from the chapter 123 ratio and common level range to lead me to conclude that the test for discriminatory assessment established by the Legislature should be abandoned in their favor.
Measured by the chapter 123 test, the 1979 assessment of the subject property is 40.8% of its market value, which is within the acceptable common level range. Therefore, the 1979 assessment of $573,600 is affirmed.
For The Year 1980
Discrimination is not in issue for the year 1980 and therefore only the following market value calculation is required to determine the proper assessment.
1980
Net income $194,366
Land requires ($455,000 x .115) 52,325
Net to improvements $142,041
Capitalized at .135 1,052,156
Land value 455,000
Total value $1,507,156
The taxing district argues that for 1980 the property should be valued at its potential for conversion to condominium use. However, there was insufficient evidence on which to base a conclusion of the value of the subject property for such use. See Center-Whiteman Corp. v. Fort Lee, 4 N.J.Tax 153 (Tax Ct. 1982).
The Clerk of the Tax Court is directed to enter a judgment:
1. Affirming the 1979 assessment of $573,600 and
2. Reducing the 1978 and 1980 assessments to the following:
*685 1978 1980
Land $182,000 $455,000
Improvements 374,800 1,052,156
Total $556,800 $1,507,156

Ratio promulgated by the Director of the Division of Taxation pursuant to chapter 123 of the Laws of 1973. N.J.S.A. 54:2 — 40.4.

This figure was derived from the income approach value of $1,756,800 and the cost approach value of $2,062,100.

This is the same ratio promulgated by the Director of the Division of Taxation on October 1 of the pretax year for school aid purposes, pursuant to N.J.S.A. 54:1-35.1.