LASSER, P.J.T.C.
In this action the taxing district contests the judgment of the Mercer County Board of Taxation which reduced the 1983 local *265 property tax assessments on a shopping-center property located at Parkway Avenue and Scotch Road in Ewing Township known as Block 365, Lots 11, 13 and 20.
The 1983 assessments and county tax board judgments are:
Original Assessments County Tax Board Judgments
Lot 11
Land $ 32,560 $ 32,560
Improvements 453,640 149,890
Total $486,200 $182,450
Lot 13
Land $ 20,760 $ 20,760
Improvements 186,440 56,940
Total $207,200 $ 77,700
Lot 20
Land $ 15,080 $ 15,080
Improvements 193,080 62,620
Total $208,160 $ 77,700
Total Shopping Center $901,560 $337,850
The Ewing Township 1983 common level ratio pursuant to N.J.S.A. 54:51A-6 is 30%, and the common level range is 25%-35%. The 1983 tax rate is $9.48.
The shopping center, originally constructed in the early 1960’s, is a typical strip neighborhood center with a 27,727 square-foot Super Fresh food store (formerly A & P) located at the southerly end and a 21,660 square-foot McCrory department store at the northerly end.[1] On the assessing date, there were seven stores occupying 30,798 square feet of ground floor area *266 located between the food store and McCrory’s.[2] There are 28,125 square feet of second-floor office space with access by elevator and stairway. The offices are centrally air conditioned. There are toilet rooms and a lobby. A ten-foot-wide, canopy-covered walk runs the entire length of the front of the shopping center.
The land area of the property is 7.53 acres, divided as follows:
Lot 11 3.57 acres
Lot 13 2.36 acres
Lot 20 1.60 acres
7.53 acres
The building area is:
First floor 80,183 square feet
Second floor 28,125 square feet
Fotomat _59 square feet
Total 108,367 square feet
Basement area 13,525 (6,400 square feet under food store and 7,125 under strip stores)
The property is in fair to good physical condition, with heating and air-conditioning equipment that is over 20 years old. Much of the acoustical tile is water stained, indicating roof leaks. There are approximately 215,000 square feet of asphalt paving in the parking area and 12 double and three single light standards.
The property is located in a business highway zone, to which the subject property conforms. Scotch Road and Parkway Avenue are major roads serving a mixed commercial, industrial and residential area. The appraisal experts agreed that the present use is the highest and best use of the property, and both used all three approaches to estimate value.
*267 In January 1981 the Broad Street National Bank of Trenton started mortgage foreclosure proceedings and the owner at that time, Suburban Square Inc., agreed to convey the property to a purchaser designated by the bank. In May 1982 the bank arranged for the property to be sold to the present owner. The property was sold on September 16, 1982 for $1,100,000. The bank made a $950,000 loan to the purchaser, secured by a new first mortgage on the property. The interest rate and other terms of the purchase money mortgage are not in evidence.
The taxing district contends that the sale of the subject is not an arms-length transaction because of the pressure of the mortgage foreclosure. Taxpayer’s expert testified that the price was low because of bad leases. I agree that the sale is not an arms-length transaction because of the circumstances surrounding the mortgage foreclosure and sale. I am unable to analyze the sale because the terms of the purchase money mortgage are not in evidence. Further, the purchase price did not include the leasehold interest of the tenants who occupy the property under older, low-rent leases.
The Cost Approach
The cost approach analysis of the experts follows:
Taxing District Taxpayer
Super Fresh store
(27,727 square feet)
Total cost new $1,217,620 $1,123,985
Less Depreciation
Physical 25%
Economic 33%
Total Depreciation 97,410 651,911
Depreciated Value 1,120,210 472,074
Two-story store & office section (58,921 square feet)
Total cost new $2,587,059 $2,161,235
Less Depreciation
Physical 20% 50%
Economic 33%
*268 Taxing District Taxpayer
Total Depreciation 517,412 1,793,825
Less roof repairs 80,183
Depreciated Value 1,989,464 367,410
McCrory store (21,660 square feet)
Total cost new $ 778,955 $ 681,551
Less Depreciation
Physical 20% 50%
Economic 33%
Total Depreciation 155,791 565,687
Depreciated Value 623,164 115,864
Fotomat (59 square feet)
Total cost new $ 5,639 $ 6,005
Less depreciation
Physical 8% 50%
Total depreciation 451 3,002
Depreciated value $ 5,188 $ 3,003
Site improvements
Asphalt paving
217,800 sq. ft. at $.48 per sq. ft. $ 104,544 215,000 sq. ft. at $.25 per sq. ft. (including depreciation) $ 53,750
7,200 10,500 Light standards
7,018 Curbing
3,046 Concrete walls
99,882 Multiplied by cost conversion factor of 1.64 and less depreciation of 50%
$ 99,883 $ 64,250 Depreciated value
Totals
Land $ 527,100 $ 375,000 (rounded)
Improvements 3,837,909 1,022,400 (rounded)
Total $4,365,009 $1,397,400
The appraisal expert for the taxing district valued the land at $70,000 per acre based on two sales, and taxpayer’s appraisal expert valued the land at $50,000 per acre based on the same *269 two sales plus three additional sales. I do not set forth their analyses because my conclusion of value does not separately value the land.
The Income Approach
A summary of the income approaches of the experts follows:
Taxing District Taxpayer
Potential gross income $ 592,658 $ 517,492
Effective gross income (after 5% vacancy) 563,025 491,617
Less expenses 222,351 258,100
Net operating income 340,674 233,517
Capitalization rate .1316 .20
Income approach value—(rounded) $2,588,708 $1,165,000
The difference in gross income is attributable to the fact that taxpayer used contract rents for the two anchor stores but the taxing district increased the rents as follows: (1) increased the Super Fresh rent from $2.35 a square foot (contract rent) to $3.45 a square foot (economic rent) ($65,142 to $95,634) and the McCrory rent from $1.85 a square foot (contract rent) to $2.62 a square foot (economic rent) ($40,071 to $56,749), an increase of $47,170; (2) added $13,600 for rental space in the first floor lobby and (3) added $14,182 for tenants’ contribution to real estate taxes, for a total of $74,952.
Taxpayer’s expenses exceeded those of the taxing district by $35,749, primarily because taxpayer included a $33,900 replacement reserve for heating, ventilation, air conditioning and roof that was not included in expenses by the taxing district.
A summary of the basis for the capitalization rates used by each expert follows:

Taxing district’s capitalization rate

Assumes a first mortgage representing 66.7% of value, a 15-year mortgage term, a 15-year holding period, a 13% mortgage *270 interest rate, a 5% annual increase for inflation and a 12% equity dividend rate. The result is an overall capitalization rate of 10.32% (.1032), to which is added 2.84% (.0284) for real property tax ($9.48 rate X 30% ratio) for a capitalization rate of 13.16% (.1316).

Taxpayer’s capitalization rate

Assumes a first mortgage representing 70% of value, a 15-year mortgage term, a 15% mortgage interest rate, a mortgage constant rate (interest and amortization) of 16.795%, and a 12% equity dividend rate. The result is an overall capitalization rate of 15.35% (.1535), to which is added $2.19[3] (.0219) for real property tax for a capitalization rate of 17.54 rounded to 17.5 (.175). In addition, taxpayer’s expert extracted the capitalization rates from the sales of Warren Plaza West in East Windsor and the subject property, which were 11.5% and 23.5%, respectively. From these two rates, he selected an effective capitalization rate of 20%.
I am not satisfied that the capitalization rate of either expert reflects the market rate. Taxpayer utilizes an unusually high mortgage interest and amortization rate.[4] I accept taxpayer’s and the taxing district’s equity dividend rate and the taxing district’s mortgage interest rate, term and ratio of mortgage to total value, but do not accept the taxing district’s 5% annual increase for inflation because the subject is an older shopping center that requires repairs and has existing vacancies and potential vacancies in 1985 when the State of New Jersey lease expires,, which makes future increases in value conjectural. I adopt a capitalization rate of .1413, which I arrive at as follows:
*271 Mortgage constant 15.18%[5] x 66.7% .1013
Equity dividend rate 12% x 33.3% .04
.1413 Total
To this rate I add taxpayer’s effective tax rate of .0219. In doing so I accept taxpayer’s method of processing tenants’ tax contributions by a ratio of tenant tax payments to total tax. It is customary for tenants’ tax contributions to be based on a percentage of the actual tax. The tenants’ tax contribution is a variable which should be included in the capitalization rate because this payment by tenants changes as the assessment changes. See Jefferson House Investment Co. v. Chatham, 4 N.J.Tax 669, 677 (Tax Ct.1982). I therefore find that the proper effective capitalization rate is .1632.
I also accept the taxing district’s economic rent for the two anchor stores whose actual rents were negotiated many years prior to the assessing date. However, in adopting the taxing district’s increased economic rent for these two stores I will not add the percentage rent now paid, the economic rent standing in the place of the contract base rent and percentage rent. I accept (as did the parties) the actual rentals of the strip stores and the second floor tenants as the economic rent, and the taxing district’s rental for “other space.” I include $7,088 for common area maintenance of the strip stores, but add nothing for the tenants’ contribution to real estate taxes because that contribution is reflected in the $2.19 tax element of the .1632 capitalization rate. The use of a replacement reserve is an accepted appraisal technique to provide for the periodic replacement of building components that wear out more rapidly than the building itself and must be replaced periodically during the building’s economic life. American Institute of Real Estate *272 Appraisers, The Appraisal of Real Estate (8 ed. 1983) at 368. I accept taxpayer’s replacement reserve.
The court’s income approach calculations are:
Total base rents (from taxing district’s expert’s appraisal) $ 558,078
Common area maintenance 7,088
Potential gross income 565,166
Less 5% vacancy 28,258
Effective gross income 536,908
Less operating expenses
Management 5% 26,845
Other expenses as testified to by both experts 194,200
Reserve for replacements 39,300
Total expenses 260,345
Net operating income 276,563
Capitalized at .1632 $1,695,000 (rounded)
The Market Approach
The experts analyzed the following sales:

Taxing district’s comparable sales

# 1. 1070 Whitehorse Avenue, Hamilton Township Block 282, Lot 16 one-story strip center—37,980 square feet on 7.143 acres, November 1981, $865,000 or $22.78 a square foot, 5% a year adjustment for time to $25.05 [6] a square foot. Subject is inferior in location (5%) and size (10%), so adjusted downward to $21.29 a square foot.
# 2. 1750 Whitehorse-Mercerville Road,- Hamilton Township Block 500, Lot 78 one-story strip center—59,600 square feet on 8.412 acres, September 1978, $1,757,734 or $29.49 a square foot adjusted to $36.39 for time (5% a year). Subject is inferior in location (15%), age (5%) and size (10%), so adjusted downward to $24.77 6 a square foot.
# 3. Route 130 & Princeton-Hightstown Road, East Windsor Block 63B, Lot 9, one-story strip center—94,308 square feet on 12.932 acres, July 1980, $1,850,-000 or $19.62 a square foot. Adjusted upward 5% a year for time to $21.58 a square foot; no other adjustments because equal in all respects to subject.
From these sales, the expert concludes that the subject’s value (land and improvements combined) is $21.50 a square foot of building (108,367 x $21.50), or $2,330,000 (rounded).

*273
Taxpayer’s comparable sales

# 1. Subject property—Sale at $10.15 a square foot.
# 2. Same as taxing district’s sale # 1. Total adjustments of minus 55% for time, location, size, condition and land value to $10.25 a square foot.
# 3. Same as taxing district’s sale # 3, but taxpayer uses price of $1,535,000, exclusive of mortgage prepayment of $265,000 and $50,000 roof escrow, to arrive at $16.28 a square foot. Total adjustment of minus 20% for time, location, condition and land value to $13.02 a square foot.
# 4. Same as taxing district’s sale # 2. Total adjustments of minus 40% for time, location, size, condition and land value to $17.69 a square foot.
Taxpayer’s expert gives the most weight to the subject sale and concludes that it demonstrates a value of $10.15 a square foot.
From their analyses of these sales, the experts drew the following conclusions of value a square foot:
Taxing District Taxpayer
Subject __ $ 10.15
1070 Whitehorse Avenue $21.29 10.25
1750 Whitehorse— Mercerville Road 24.77 17.69
Route 130 21.58 13.02
I have rejected the sale of the subject as not being an arms-length sale, and I reject the Route 130, East Windsor sale because the experts disagree on the price and the portion subject to ground lease. The sales at 1070 Whitehorse Avenue and 1750 Whitehorse-Mercerville Road are of substantially smaller properties (37,980 square feet and 59,600 square feet compared to the subject’s 108,367 square feet), and they do not have second floor space. The court’s income approach value of $1,695,000 amounts to $15.64 a square foot of building, which falls within the $10.25 to $24.77 adjusted value range of the subject as found by the experts based on these two sales.
Conclusion
The substantial difference between the experts’ cost approach values ($4,365,009 and $1,397,400) is attributable to insufficient physical and economic depreciation by the taxing district and excessive economic depreciation by taxpayer. This *274 indicates the significance of the depreciation element of the cost approach. Because I am not satisfied with either expert’s substantiation of this element, I find the cost approach of little help in estimating the value of the subject. The market approach also sheds little light on the value of the subject property because of substantial differences among the comparable sale properties. I give most weight to the income approach and conclude that the value of the subject property as of October 1, 1982 is $1,695,000.
Discrimination
The upper limit of the common level range of assessment in Ewing Township is 35%. The total 1983 assessment of $901,560 exceeds 35% of the court’s value determination.[7] Therefore, the assessment must be reduced to the 1983 average ratio of 30% of value ($1,695,000 x .30) or $508,500. I make no separate determinations of the land value or the value of the improvements on each lot[8] for the purpose of allocating the $508,500 assessment among the three lots. Instead, I accept the taxing district’s land assessments and proportion of building assessment allocated to each lot. See In re Appeals of Kents, 34 N.J. 21, 33-34, 166 A.2d 763 (1961). On this basis, I find the proper assessments for 1983 to be:
*275 Block 365
Lot 11
Land $ 32,560
Improvements 241,640
Total $274,200
Lot 13
Land $ 20,760
Improvements 96,140
Total $116,900
Lot 20
Land $ 15,080
Improvements 102,320
Total $117,400
Total $508,500
The Clerk of the Tax Court is directed to enter a judgment in accordance with the foregoing.

 The food store was added in 1972.

 After September 30, 1983, the number of stores was increased to 12 by converting one store into six stores.

 $2.19 is arrived at by deducting the 23% ratio of the tenants' 1983 tax contribution to total 1983 taxes from the 1983 tax rate of $2.84. ($19,708 $85,468 = .23. $2.84 X .23 = $.65. $2.84 less $.65 = $2.19.)

 When asked the actual interest and amortization rate of the subject purchase money mortgage, taxpayer’s expert stated that he did not know.

 Interest and amortization of a 15-year direct reduction mortgage at 13% interest.

 This figure appears to be incorrect.

 This calculation is made using the original assessment, not the county board of taxation judgment. Rumson v. Haran, 3 N.J. Tax 590 (Tax Ct.1981).

 The contests of lots 11, 13 and 20 were tried together, the lots comprising one economic unit. There is no evidence of the separate value of each lot's improvements.